**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MAZY SEHRGOSHA, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | Case No. 1:18-cv-00230-RGA |
| KINDRED HEALTHCARE, INC., PHYLLIS R. YALE, BENJAMIN A. BREIER, JOEL ACKERMAN, JONATHAN D. BLUM, PAUL J. DIAZ, HEYWARD R. DONIGAN, RICHARD GOODMAN, CHRISTOPHER T. HJELM FRED J. KLEISNER, SHARAD MANSUKANI, M.D., and LYNN SIMON, M.D., | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' APPLICATION
FOR AN AWARD OF ATTORNEY'S FEES AND EXPENSES**

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ........................................................................................1

II.     KINDRED ANNOUNCES ITS SALE TO CONSORTIUM AND ISSUES
        DEFECTIVE AND MISLEADING PROXY STATEMENTS............................................2

III.    PLAINTIFFS FILED THEIR ACTIONS TO REMEDY THE PROXY ...........................2

IV.     THE RELATED FEDERAL LITIGATION.......................................................................3

V.      THE RELATED DELAWARE CHANCERY COURT LITIGATION.............................3

VI.     PLAINTIFFS' COUNSEL ARE ENTITLED TO THE FEE AWARD.............................4

        A.      The Supplemental Disclosures Substantially Benefitted Kindred Stockholders .....6

                1.      The Supplemental Disclosures Included Material Financial Projections ....7

                2.      The Supplemental Disclosures Regarding the Financial Advisors'
                        Analyses...................................................................................................9

        B.      The Suit Was "Meritorious" When Filed...............................................................11

        C.      The Requested Fee Award Is Reasonable...............................................................12

                1.      The Time and Labor Required...................................................................13

                2.      Fee Awards in Similar Cases ....................................................................14

                3.      The Skill Requisite to Perform the Legal Service Properly, the Novelty
                        and Difficulty of the Question Presented by the Case, the Preclusion of
                        Other Employment, and Time Limitations ................................................15

                4.      The Experience, Reputation, and Ability of the Attorneys........................16

                5.      A Reasonable Multiplier is Appropriate Because Plaintiffs' Counsel
                        Undertook Representation on a Contingent Basis .....................................16

VII.    PLAINTIFFS' COUNSEL FEE AWARD UNDER DELAWARE LAW........................18

VIII.   CONCLUSION.............................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                    **Page(s)**

*Alaska Elec. Pension Fund v. Brown*,
   988 A.2d 412 (Del. 2010) ......................................................................................................6

*Allied Artists Pictures Corp. v. Baron*,
   413 A.2d 876 (Del. 1980) .....................................................................................................6

*Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*,
   54 F.3d 69 (2d Cir. 1995) ................................................................................................5, 12

*In re Appraisal of the Orchard Enters., Inc.*,
   No. 5713-CS, 2012 Del. Ch. LEXIS 165 (Del. Ch. July 18, 2012) .................................10, 11

*In re AremisSoft Corp. Sec. Litig.*,
   210 F.R.D. 109 (D.N.J. 2002) ............................................................................................14

*Aron v. Crestwood Midstream Partners LP*,
   No. 4:15-CV-1367, 2016 U.S. Dist. LEXIS 152427 (S.D. Tex. Oct. 14, 2016) ..................14

*In re AXA Fin., Inc. S'holders Litig.*,
   No. 18268, 2002 Del. Ch. LEXIS 57 (Del. Ch. May 16, 2002) ..........................................19

*Brown v. Brewer*,
   No. CV 06-3731-GHK,
   2010 U.S. Dist. LEXIS 60863 (C.D. Cal. June 17, 2010) .............................................7, 8, 12

*Chrapliwy v. Uniroyal, Inc.*,
   670 F.2d 760 (7th Cir. 1982) ..............................................................................................14

*Cluett, Peabody & Co. v. CPC Acquisition Co.*,
   863 F.2d 251 (2d Cir. 1988)................................................................................................18

*Cohn v. Nelson*,
   375 F. Supp. 2d 844 (E.D. Mo. 2005)................................................................................15

*Cooperstock v. Pennwalt Corp.*,
   820 F. Supp. 921 (E.D. Pa. 1993) ...........................................................................6, 7, 11, 12

*Cort v. Ash*,
   422 U.S. 66 (1975)..............................................................................................................18

*In re Del Monte Foods Co. S'holders Litig.*,
   No. 6027-VCL, 2011 Del. Ch. LEXIS 94 (Del. Ch. June 27, 2011) ......................................18

*Denton v. Pennymac Loan Servs., LLC*,
   No. 4:16cv32, 2017 U.S. Dist. LEXIS 74037 (E.D. Va. May 12, 2017)...........................15, 16

*Franklin Balance Sheet Inv. Fund v. Crowley*,
No. 888-VCP, 2007 Del. Ch. LEXIS 133 (Del. Ch. Aug. 30, 2007) .......................................19

*In re Golden State Bancorp Inc. S'holders Litig.*,
No. 16175, 2000 Del. Ch. LEXIS 8 (Del. Ch. Jan. 7, 2000) .............................................19, 20

*Helwig v. Vencor, Inc.*,
251 F.3d 540 (6th Cir. 2001) ............................................................................................12

*In re Hot Topic, Inc. Sec. Litig.*,
No. CV 13-02939 SJO,
2014 U.S. Dist. LEXIS 180513 (C.D. Cal. May 2, 2014) ........................................................8

*Joel Rosenfeld IRA* v. *Cynosure, Inc., et al.*,
Civ. Action No. 17- 10309,
Stipulation and Order Closing Action (D. Mass. Feb. 5, 2018) ................................................15

*In re Johnson & Johnson Derivative Litig.*,
No. 10-2033(FLW), 2013 U.S. Dist. LEXIS 180822 (D.N.J. June 13, 2013) ..........................14

*Johnson v. Ga. Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) .......................................................................................12, 16

*Kahan v. Rosenstiel*,
424 F.2d 161 (3d Cir. 1970) ............................................................................................11

*Kalyawongsa v. Moffett*,
105 F.3d 283 (6th Cir. 1997) ............................................................................................18

*Kim v. BATS Global Markets, Inc.*,
No. 2:16-cv-02817, Stipulated Order Dismissing Action (D. Kan. Jan 13, 2017) ....................15

*Kinney v. Int'l Bhd. of Elec. Workers*,
939 F.2d 690 (9th Cir. 1991) ............................................................................................13

*Kopet v. Esquire Realty Co.*,
523 F.2d 1005 (2d Cir. 1975) ..............................................................................................5

*Koppel v. Wien*,
743 F.2d 129 (2d Cir. 1984) ...........................................................................................5, 6

*Lane v. Page*,
862 F. Supp. 2d 1182 (D.N.M. 2012) ...................................................................................5

*Lewis v. Gen. Emp't Enters., Inc.*,
No. 91 C 0291, 1992 U.S. Dist. LEXIS 5464 (N.D. Ill. Apr. 14, 1992) ...................................6

*Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*,
    487 F.2d 161 (3d Cir. 1973)...................................................................................13

*In re Lucent Techs., Inc. Sec. Litig.*,
    327 F. Supp. 2d 426 (D.N.J. 2004) .......................................................................14

*Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*,
    11 A.3d 1175 (Del. Ch. 2010)...........................................................................9, 14

*McCafferty v. Local 254, Serv. Emps. Int'l Union*,
    186 F.3d 52 (1st Cir. 1999) ...................................................................................13

*McKittrick v. Gardner*,
    378 F.2d 872 (4th Cir. 1967) ................................................................................17

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (U.S. 1970)...............................................................................1, 4, 5

*In re Nellson Nutraceutical, Inc.*,
    356 B.R. 364 (Bankr. D. Del. 2006) .......................................................................9

*In re Netsmart Techs., Inc. S'holders Litig.*,
    924 A.2d 171 (Del. Ch. Mar. 14, 2007) .................................................................8

*Nichting v. DPL Inc.*,
    No. 3:11-cv-141, Order and Final J. (S.D. Ohio Feb. 24, 2012) ..........................14

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
    No. 14-68-RGA, 2015 U.S. Dist. LEXIS 85510 (D. Del. July 1, 2015) .................8

*In re Plains Res. Inc. S'holders Litig.*,
    No. 071-N, 2005 Del. Ch. LEXIS 12 (Del. Ch. Feb. 4, 2005).......................19, 20

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998)............................................................................12, 13

*In re Pure Res., Inc. S'holders Litig.*,
    808 A.2d 421 (Del. Ch. 2002)...............................................................................11

*In re Ravisent Techs., Inc. Sec. Litig.*,
    No. 00-CV-1014, 2005 U.S. Dist. LEXIS 6680 (E.D. Pa. April 18, 2005).....17, 18

*In re Rite Aid Corporation Securities Litigation*,
    396 F.3d 294 (3d Cir. 2005)..................................................................................17

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
    No. 04-374, 2008 U.S. Dist. LEXIS 124269 (D.N.J. Dec. 9, 2009).......................17

*Rudel Corp. v. Heartland Payment Sys.,*
    No. 16-2229, 2018 U.S. Dist. LEXIS 10636 (D.N.J. Jan. 22, 2018) ......................................14

*In re Schering-Plough Corp. Enhance Sec. Litig.,*
    No. 08-397 (DMC) (JAD), 2013 U.S. Dist. LEXIS 147981 (D.N.J. Aug. 28, 2013)..............15

*In re Schering-Plough/Merck Merger Litig.,*
    No. 09-CV-1099 (DMC), 2010 U.S. Dist. LEXIS 29121 (D.N.J. Mar. 26, 2010) .............5, 17

*Smith v. Robbins & Myers,*
    969 F. Supp. 2d 850 (S.D. Ohio 2013) .............................................................................9, 12

*Souryavong v. Lackawanna Cnty.,*
    Nos. 15-3895, 16-2214, 2017 U.S. App. LEXIS 18173 (3d Cir. Sept. 20, 2017) .............12, 13

*Steiner v. Hercules, Inc.,*
    835 F. Supp. 771 (D. Del. 1993) .........................................................................................13

*In re Talley Indus., Inc. S'holders Litig.,*
    No. 15961, 1998 Del. Ch. LEXIS 53 (Del. Ch. Apr. 13, 1998)..............................................7

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002) .............................................................................................16

*In re Xerox Corp. Sec. Litig.,*
    935 F. Supp. 2d 448 (D. Conn. 2013).....................................................................................8

*In re Xoom Corp. Stockholder Litig.,*
    No. 11263-VCG, 2016 Del. Ch. LEXIS 117 (Del. Ch. Aug. 4, 2016) ..................................20

**Other Authorities**

Steven M. Davidoff,
    *Fairness Opinions*, 55 Am. U.L. Rev. 1557 (2006) ...........................................................9, 10

## I.    PRELIMINARY STATEMENT

Plaintiff Mazy Sehrgosha through undersigned counsel, joined by Plaintiff Debra Carter ("Plaintiffs"), respectfully submits this memorandum of law for an award of attorneys' fees and expenses in the amount of $575,000 (the "Fee Award").[1] As a result of Plaintiffs' litigation efforts, Defendants provided plainly material financial information regarding the proposed acquisition of Kindred Healthcare, Inc. ("Kindred" or the "Company") by affiliates of TPG and Welsh, Carson, Anderson & Stowe, and Humana, Inc. (collectively, the "Consortium") (the "Proposed Transaction") previously omitted from the preliminary and definitive proxy statements (the "Supplemental Disclosures"). The Supplemental Disclosures will assist Kindred stockholders to properly assess the financial fairness of the Merger and the valuation analyses performed by Kindred's financial advisors, Barclays Capital Inc. ("Barclays") and Guggenheim Securities, LLC ("Guggenheim") (collectively, the "Financial Advisors"). Plaintiffs therefore conferred a substantial benefit upon all Kindred stockholders, entitling Plaintiffs' counsel to an award of fees and expenses. *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 396 (U.S. 1970).

Plaintiffs offered Defendants to meet and confer to resolve the instant Fee Motion and got no response. Plaintiffs will continue to attempt to meet and confer with Defendants, however, in order to preserve all rights and to ensure the Consortium is aware of the liabilities it assumes by acquiring Kindred, Plaintiffs are filing their motion for a Fee Award before the Vote (as defined below) to preserve all rights.

---

[1]    Plaintiff Debra Carter, a Kindred Healthcare stockholder, filed the action *Carter v. Kindred Healthcare, Inc.*, 18-cv-254, asserting similar allegations as Plaintiff Sehrgosha, participated in prosecuting the claims described herein, and joins in this application. The reference to "Plaintiffs" in this Brief refers solely to Plaintiffs Sehrgosha and Carter.

## II. KINDRED ANNOUNCES ITS SALE TO CONSORTIUM AND ISSUES DEFECTIVE AND MISLEADING PROXY STATEMENTS

On December 19, 2017, the Board caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with The Consortium, pursuant to which, Kindred shareholders will receive $9.00 in cash for each share of common stock they own (the "Merger Consideration"). ¶ 2.[2]  On February 5, 2018, in order to convince stockholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading preliminary proxy statement (the "Preliminary Proxy") with the SEC. ¶ 3. Specifically, the Preliminary Proxy was materially incomplete and misleading as it failed to disclose: (i) the Unlevered Free Cash Flow and Net Operating financial projections; and (ii) a fair summary of the key inputs in the analysis performed by the Financial Advisors in support of their fairness opinions. ¶¶ 2-4.

## III. PLAINTIFFS FILED THEIR ACTIONS TO REMEDY THE PROXY

On February 8, 2018, Plaintiff Sehrgosha filed a class action complaint alleging violations of Sections 14(a) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9.[3]  On February 16, 2018, Plaintiff Sehrgosha filed a motion for preliminary injunction. [DI 14-17].  On February 20, 2018, Plaintiff Sehrgosha filed a motion to expedite discovery. [DI 18-20].  On February 21, 2018, Defendants filed the definitive proxy statement (the "Proxy"), without addressing the disclosures raised in the Action but setting a stockholder vote on March 29, 2018 (the "Stockholder Vote").

Thereafter, the parties to the Action engaged in arm's length negotiations regarding the pending motions and corrective disclosures to the Proxy prior to the Stockholder Vote. On

---

[2]    References to "¶" are to the Complaint filed on February 8, 2018 in this Action. Capitalized terms are defined in the Complaint and/or prior motions unless defined herein.
[3]    Plaintiff Carter filed her complaint on February 13, 2018. 1:18-cv-00254-RGA [DI 1].

February 27, 2018, Defendants agreed to supplement the Proxy to provide: (i) the projections for Unlevered Free Cash Flow; (ii) the projections for net operating losses; (iii) the tax reform adjust projections for Unlevered Free Cash Flow and Net Operating Losses; and (iv) material key inputs and assumptions regarding the Financial Advisors' various analyses in support of their respective fairness opinions. *See* Declaration of Blake A. Bennett in Support of Plaintiffs' Application for an Award of Attorneys' Fees and Expenses (the "Bennett Decl."), Ex. 1.  As a result of the agreement for Supplemental Disclosures, Plaintiff Sehrgosha withdrew his preliminary injunction motion on February 27, 2018. [DI 25].

## IV.   THE RELATED FEDERAL LITIGATION

In addition to this Action, four other related actions challenging the Proxy were filed, styled *Tompkins v. Kindred Healthcare, Inc. et al.*, C.A 3:18-cv-86 (W.D. Ky.); *Buskirk v. Kindred Healthcare, Inc. et al.*, C.A. No. 3:18-CV-92 (W.D. Ky.); *Rosenfeld v. Kindred Healthcare, Inc. et al.*, C.A. No. 1:18-cv-00260 (D. Del.); and *Einhorn v. Kindred Healthcare, Inc. et al.*, C.A. No. 1:18-cv-00297 (D. Del.) (collectively, the "Related Actions"). In an effort to undermine the effects of this Action, the parties to the Related Actions (that did not even move for a preliminary injunction) entered into a Memorandum of Understanding to resolve the Related Actions on an individual basis for the same Supplemental Disclosures already obtained here on February 27, 2018, plus some trivial background information.

On March 6, 2018, the Company filed a supplement to the Proxy on Form DEFA14A that contained the Supplemental Disclosures highlighted in yellow.  Bennett Decl. ¶ 4; Ex. 1.

## V.   THE RELATED DELAWARE CHANCERY COURT LITIGATION

On March 8, 2018, another related action was filed in Delaware Chancery Court styled *Brigade Leveraged Capital Structures Fund Ltd. v. Kindred Healthcare, Inc.*, C.A. No. 2018-0165-SG (the "State Action"). The State Action also sought expedited proceedings and a

3

preliminary injunction on a number of issues, including issues related to the Unlevered Free Cash Flow figures. Defendants opposed expedition based on two grounds, laches and mooted issue. In fact, Defendants went in detail to explain this Action already moved for a preliminary injunction and has already resolved the issue regarding Unlevered Free Cash Flow. *See* Bennett Decl., Ex. 2 at 8-9 (Kindred Defs' Opp'n Br. to Pls' Mot. for Expedited Proceedings, State Action (Del. Ch. Mar. 13, 2018)).  On March 23, 2017, the Company filed additional supplemental disclosures regarding Mansukani's exclusion from Board discussions regarding the sale process and eventually denied access to board materials due to his affiliation with TPG.  On March 27, 2018, the Court of Chancery denied the State Action's request for further disclosures regarding Mansukani's access to board materials but ordered the Company to delay or extend the stockholder vote by five business days in order to allow shareholders, who may wish to seek appraisal in light of the additional information, time to perfect their appraisal rights.  The Company has since extended the vote to April 5, 2018.

## VI.   **PLAINTIFFS' COUNSEL ARE ENTITLED TO THE FEE AWARD**

Plaintiffs' Counsel are entitled to an award of reasonable attorneys' fees and expenses when their efforts confer a "substantial" or "common" benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them.[4]  *Mills*, 396 U.S. at 396. In *Mills*, the Supreme Court held that vindicating Section 14's statutory policy of "informed corporate suffrage" confers a substantial benefit upon stockholders sufficient to warrant awarding attorneys' fees. 396 U.S. at 396. As the Supreme Court explained:

> In many suits under § 14 (a) . . . it may be impossible to assign monetary value to
> the benefit. Nevertheless, the stress placed by Congress on the importance of fair

---

[4]     Kindred is incorporated in Delaware and therefore reference to Delaware corporate law is proper. As demonstrated herein, the Fee Award is also proper under Delaware law.

> and informed corporate suffrage leads to the conclusion that, in vindicating the statutory policy, petitioners have rendered a substantial service to the corporation and its shareholders . . . [P]rivate stockholders' actions of this sort involve corporate therapeutics, and furnish a benefit to all shareholders by providing an important means of enforcement of the proxy statute.

*Id*. (internal quotation marks omitted) (citations omitted)

Further, the Supreme Court in *Mills* explained that requiring a corporation to pay Plaintiffs' attorneys' fees is the proper way to spread the costs proportionately among the benefitting stockholders, as doing so "is not to saddle the unsuccessful party with the expenses but to impose them on the class that has benefited from them and that would have had to pay them had it brought the suit." 396 U.S. at 396-97.[5]

Since *Mills*, it has become "well established that non-monetary benefits, such as promoting fair and informed corporate suffrage . . . may support a fee award." *Koppel v. Wien*, 743 F.2d 129, 134 (2d Cir. 1984). "[T]he promotion of corporate suffrage regarding a significant policy issue confers a substantial benefit regardless of the percentage of votes cast for or against the proposal at issue." *Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*, 54 F.3d 69, 72 (2d Cir. 1995); *see also Kopet v. Esquire Realty Co.*, 523 F.2d 1005, 1008 (2d Cir. 1975) (finding fee award warranted where litigation caused company to disclose financial statements). This circuit has recognized that where supplemental disclosures facilitate communication and inform shareholders of previously undisclosed material information, attorneys' fees are awardable. *See In re Schering-Plough/Merck Merger Litig.*, No. 09-CV-1099 (DMC), 2010 U.S. Dist. LEXIS 29121, at *48-49 (D.N.J. Mar. 26, 2010).

---

[5]     *See, e.g., Lane v. Page*, 862 F. Supp. 2d 1182, 1255 (D.N.M. 2012) ("[C]ourts increasingly have recognized that the expenses incurred by one shareholder in the vindication of a corporate right of action can be spread among all shareholders through an award against the corporation, regardless of whether an actual money recovery has been obtained in corporation's favor.") (internal quotation marks omitted).

Defendants "bear the burden of production and persuasion on the issue of causation. Where, as here, [P]laintiffs' lawsuit is mooted by defendants' corrective action, the burden properly shifts to defendants to establish the absence of a causal connection in order to defeat a claim for legal fees." *Koppel*, 743 F.2d at 135.

Additionally, the common benefit does not need to flow *solely* from this litigation for the Plaintiffs' Counsel to be entitled to recover an award of attorney's fees and expenses. "For a causal connection to be established, the lawsuit need not have been the only possible cause or even the primary cause of the corporation's actions." *Lewis v. Gen. Emp't Enters., Inc.*, No. 91 C 0291, 1992 U.S. Dist. LEXIS 5464, at *11 (N.D. Ill. Apr. 14, 1992) (citing *United Handicapped Fed'n v. Andre*, 622 F.2d 342, 346-47 (8th Cir. 1980)). "Rather, the lawsuit need only have been a contributing cause of the corporate benefit. In short, to meet their burden, defendants essentially are required to persuade this Court that the lawsuit was not a factor in their decision-making and subsequent conduct."[6] *Lewis*, 1992 U.S. Dist. LEXIS 5464, at *11; *Cooperstock v. Pennwalt Corp.*, 820 F. Supp. 921, 923 (E.D. Pa. 1993) ("If plaintiff can demonstrate these two elements - merit and substantial benefit - the burden then shifts to the defendant to prove that the lawsuit did not in any way cause their action which ultimately rendered the suit moot.").[7]

A.     **The Supplemental Disclosures Substantially Benefitted Kindred Stockholders**

Due to Plaintiffs' Counsels' efforts, Defendants issued the Supplemental Disclosures that

---

[6]     Plaintiffs' Counsel reserves its right to conduct relevant discovery regarding causation in the event Defendants challenge it.

[7]     *See also Alaska Elec. Pension Fund v. Brown*, 988 A.2d 412, 417 (Del. 2010) ("Where, as here, a defendant takes action subsequent to the complaint that renders the claims asserted moot, ***Delaware law imposes on the defendant the burden to show that no causal connection existed between the initiation of the suit and any later benefit to the shareholders***.") (emphasis added); *Allied Artists Pictures Corp. v. Baron*, 413 A.2d 876, 880 (Del. 1980) ("The main concern apparent in our cases has been that the party who takes the action that cures the alleged wrong to the corporation's benefit and thereby moots or settles the lawsuit should ***bear the burden of demonstrating that the lawsuit did not in any way cause their action***.") (emphasis added).

conferred a substantial benefit on Plaintiffs and Kindred stockholders prior to the Stockholder Vote. Courts have long recognized the value of corrective disclosures like those at issue in this case. *See, e.g.*, *Cooperstock*, 820 F. Supp. at 924 (citing *Mills*, 396 U.S. at 394-96) ("The 'substantial benefit' requirement [] has been interpreted broadly and has been held to include pecuniary as well as nonpecuniary gains."). Defendants disclosed plainly material information regarding the forecasted financial metrics for Kindred, which was relied on by the Board to recommend the Proposed Transaction and by the Financial Advisors to render their opinions that the Proposed Transaction was fair. *See Brown v. Brewer*, No. CV 06-3731-GHK (SHx), 2010 U.S. Dist. LEXIS 60863, at *70 (C.D. Cal. June 17, 2010) ("A reasonable shareholder would have wanted to independently evaluate management's internal financial projections to see if the company was being fairly valued. [T]here is a substantial likelihood that a reasonable shareholder would consider it important in making his decision.") (internal quotation marks omitted).

Indeed, timely, meaningful disclosures such as those reflected in the Supplemental Disclosures can provide greater benefit to a class than money damages, as additional information is "presumably of greater value to the class than any potential award of damages based on the failure to disclose the same information, as such information is of the greatest utility when it is available in a timely manner to inform the stockholders[][.]" *In re Talley Indus., Inc. S'holders Litig.*, No. 15961, 1998 Del. Ch. LEXIS 53, at *46 (Del. Ch. Apr. 13, 1998).

### 1.     The Supplemental Disclosures Included Material Financial Projections

The Supplemental Disclosures added the following plainly material projected financial metrics for Kindred: (i) unlevered free cash flow projections; (ii) net operating loss projections; and (iii) illustrative adjustments related to the potential impact of the expected U.S. federal tax reform, all of which were relied upon by the Financial Advisors and the Board; as illustrated below:

7

| (US$ in millions) | Q4 2017E | Projections | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | 2018E | 2019E | 2020E | 2021E | 2022E |
| Revenue | $ 1,507 | $ 6,000 | $6,167 | $6,399 | $ 6,600 | $ 6,830 |
| EBITDAR[1] | $ 195 | $ 810 | $ 827 | $ 847 | $ 841 | $ 881 |
| EBITDA[2] | $ 119 | $ 515 | $ 520 | $ 531 | $ 519 | $ 555 |
| Unlevered Free Cash Flow[3] | $33-110 | $197-217 | $ 210 | $ 208 | $ 207 | $ 245 |
| Unlevered Free Cash Flow (Illustrative – Tax Bill)[4] | $33-110 | $250-270 | $ 261 | $ 264 | $ 264 | $ 305 |
| Unlevered Free Cash Flow (Illustrative – Tax Bill & Medicare)[5] | $33-110 | $250-270 | $ 261 | $ 264 | $237-264 | $277-305 |
| NOL Utilization | $ 13 | $ 54 | $ 60 | $ 67 | $ 22 | — |
| NOL Utilization (Illustrative – Tax Bill)[6] | $ 13 | $ 51 | $ 50 | $ 21 | — | — |

It is well-settled that a Company's financial projections are among the most important information a shareholder can have when evaluating the proposed consideration in a merger. *See OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, No. 14-68-RGA, 2015 U.S. Dist. LEXIS 85510, at *20-21 (D. Del. July 1, 2015) (noting that projections were included in the proxy because they were provided to bidders and bankers, as required by Delaware law, and citing Delaware law); *In re Hot Topic, Inc. Sec. Litig.*, No. CV 13-02939 SJO (JCx), 2014 U.S. Dist. LEXIS 180513 (C.D. Cal. May 2, 2014) (denying motion to dismiss in part based on failure to disclose unlevered free cash flows); *Brown*, 2010 U.S. Dist. LEXIS 60863, at *70 ("A reasonable shareholder would have wanted to independently evaluate management's internal financial projections to see if the company was being fairly valued. [T]here is a substantial likelihood that a reasonable shareholder would consider it important in making his decision.") (internal quotation marks omitted); *In re Xerox Corp. Sec. Litig.*, 935 F. Supp. 2d 448, 485 (D. Conn. 2013) ("'[A] duty to update opinions and projections may arise if the original opinions or projections have become misleading as the result of intervening events.'").[8]

These financial projections were repeatedly utilized and relied upon by both the Board and the Financial Advisors in their decisions regarding the Proposed Transaction. Thus, the failure to disclose this information to Kindred stockholders so they could assess the prospective financial

---

[8]     *See also, In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 203 (Del. Ch. Mar. 14, 2007) (noting that management projections are important because management has "meaningful insight into their firms' futures that the market [does] not").

future of Kindred, as well as the Board's recommendation, and the veracity of the Financial Advisors' respective fairness opinions rendered the Proxy materially incomplete and misleading. However, thanks to the Supplemental Disclosures, Kindred stockholders have access to this plainly material information, and may now cast an informed vote regarding the Proposed Transaction.

## 2.  The Supplemental Disclosures Regarding the Financial Advisors' Analyses

The Supplemental Disclosures also provided shareholders with material financial data to understand the Financial Advisors' valuations and thereby cast a fully informed vote. First, the Supplemental Disclosures revealed key inputs and assumptions underlying each Financial Advisors' DCF analyses, including how the Financial Advisors determined their respective ranges of discount rates, the terminal cash flow values, the assumed amount of debt for the Company, and the book value of preferred stock.  *See* Bennett Decl., Ex. 1.

The inputs and assumptions underlying the values utilized in a DCF analysis are material to shareholders, so that they may judge for themselves if such calculations were appropriate. *See, e.g.*, *Smith v. Robbins & Myers*, 969 F. Supp. 2d 850 (S.D. Ohio 2013) (finding omissions of DCF inputs material and denying motion to dismiss Section 14(a) claim). The calculation of a terminal value under a DCF analysis "has a material impact on [the] ultimate conclusion as to the [] enterprise value." *In re Nellson Nutraceutical, Inc.*, 356 B.R. 364, 374 (Bankr. D. Del. 2006).[9]

As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions – in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M.

---

[9]     *See also*, *Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*, 11 A.3d 1175, 1177-78 (Del. Ch. 2010) (finding that the failure to disclose the inputs a banker uses in determining its discount rates "bears materially on the decision to be made by . . . stockholders" and enjoining the merger unless and until corrective discount rate disclosures were made).

Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value . . . ." *Id.*

Second, the Supplemental Disclosures provided material information concerning the Financial Advisors' selection of ranges in its various public information analyses, including: (i) the mean, median, and high/low multiples utilized by the Financial Advisors in their respective comparable public company analyses; and (ii) the individual analyst price targets utilized by the Financial Advisors, to determine the equity value ranges from these methodologies; see below:

**Homecare Comparable Companies**

| | 2018E EV to EBITDA Multiples, as Adj. |
|---|---|
| High | 15.9x |
| Low | 9.7x |
| Mean | 11.8x |
| Median | 10.8x |

**Facility-Based Care Comparable Companies**

| | 2018E EV to EBITDA Multiples, as Adj. |
|---|---|
| High | 10.1x |
| Low | 4.3x |
| Mean | 7.8x |
| Median | 8.4x |

| Analyst Price Targets as of the Unaffected Date | |
|---|---|
| Analyst | Price Target |
| Stifel | $7.00 |
| Bank of America Merrill Lynch | $7.50 |
| Mizuho | $7.50 |
| RBC | $8.50 |
| Deutsche Bank | $9.00 |
| J.P. Morgan | $11.00 |
| Mean Price | $8.42 |
| Median Price | $8.00 |

| Wall Street Equity Research Analysts | Price Targets (as of 12/17/17) |
|---|---|
| Bank of America Merrill Lynch | $ 7.50 |
| Deutsche Bank | 9.00 |
| J.P. Morgan | 11.00 |
| Mizuho | 7.50 |
| RBC Royal Bank | 8.50 |
| Stifel | 7.00 |
| Median | 8.00 |

The Delaware Court of Chancery has routinely emphasized the materiality of valuation multiples, such as the ones omitted from the Proxy, in connection with determining the fair value of a company. *See In re Appraisal of the Orchard Enters., Inc.*, No. 5713-CS, 2012 Del. Ch. LEXIS 165, at *6-7 (Del. Ch. July 18, 2012) ("What is more important to me, though, is that

Orchard's expert generated an array of comparables from which valuation multiples in the form of medians and means could be derived, but then chose multiples well below the median and mean[.]"); *see also In re Pure Res., Inc. S'holders Litig.*, 808 A.2d 421, 449 (Del. Ch. 2002) ("The real informative value of the banker's work is not in its bottom-line conclusion, but in the valuation analysis that buttresses that result.").

In sum, the Supplemental Disclosures provided plainly material information that was missing from the Proxy. This information was necessary for shareholders to receive a fair summary of the Financial Advisors' work. Without disclosure of this information, the Financial Advisors' analyses were misleading and incomplete.

## B.    The Suit Was "Meritorious" When Filed

"In order to recover attorney's fees, it is not necessary that suit be brought to successful completion . . . ." *Kahan v. Rosenstiel*, 424 F.2d 161, 167 (3d Cir. 1970), *cert. denied*, *Glen Alden Corp. v. Kahan*, 398 U.S. 950 (1970). Indeed, attorneys' fees have been awarded "although it was not yet determined what relief if any [Plaintiff] could obtain." *Id.*[10] Rather, a claim is considered "meritorious" when filed "'if it can withstand a motion to dismiss on the pleadings if, at the same time, the [P]laintiff possesses knowledge of provable facts which hold out some reasonable likelihood of ultimate success.'" *Cooperstock*, 820 F. Supp. at 924; *see also Kahan*, 424 F.2d at 167 ("In several cases which became moot, courts have said suits were 'meritorious' if they could have survived a motion to dismiss."). Importantly, "'[i]t is not necessary that factually there be absolute assurance of ultimate success, but only that there be some reasonable hope.'" *Cooperstock*, 820 F. Supp. at 924.

Here, as noted above, courts have denied motions to dismiss and granted preliminary

---

[10]    Fees have even been awarded when suit was not even commenced.  *See Kahan*, 424 F.2d at 167 n.7.

injunctions in actions premised upon the omission of financial projections or other metrics underlying a financial advisor's fairness opinion. *Supra* § A.1-2. As the *Brown* and *Smith* Courts held, under Section 14, "if a Proxy discloses valuation information, it must be complete and accurate." *Smith*, 969 F. Supp. 2d at 874 (citing *Brown*, 2010 U.S. Dist. LEXIS 60863, at *69-70); *Helwig v. Vencor, Inc.*, 251 F.3d 540, 560-61 (6th Cir. 2001) ("With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.").

Simply put, there is no doubt that Plaintiffs "had some reasonable hope for success" on their claims, *Cooperstock*, 820 F. Supp. at 924, and there is a strong likelihood Plaintiffs would have prevailed on the merits of those claims had Defendants failed to moot them.

## C.    The Requested Fee Award Is Reasonable

Where, as here, there is no "common fund" out of which attorneys' fees can be awarded, the lodestar method is the appropriate method to measure a requested fee award. *See, e.g., In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998) (lodestar method appropriate "where the nature of the recovery does not allow the determination of the settlement's value necessary for application of the percentage-of-recovery method."); *Wal-Mart Stores, Inc.*, 54 F.3d at 73 (affirming order awarding fees for enhanced disclosure based on lodestar and multiplier).

In determining the appropriate amount of an award of attorneys' fees, the Court should consider Plaintiffs' Counsel's lodestar and expenses, as well as the following relevant factors (the "*Johnson* factors").[11] Here, application of the relevant *Johnson* factors demonstrates that Plaintiffs'

---

[11]    The Third Circuit incorporates the twelve factors set forth in the seminal Fifth Circuit's *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974), *superseded by statute on other grounds by* 11 U.S.C. § 330. *See Souryavong v. Lackawanna Cnty.*, Nos. 15-3895,

requested Fee Award should be granted in full.

### 1. The Time and Labor Required

Plaintiffs' Counsel expended a total of 216.8 hours of attorney and paralegal time in prosecuting this action, including pre-suit investigation, drafting the complaints, reviewing and analyzing relevant SEC filings, drafting and filing a motion and brief for preliminary injunction, drafting and filing a motion and brief for expedited discovery, negotiating with defense counsel, and preparing the instant motion. *See* Bennett Decl. ¶ 5; Exs. 3-5, Fee Declarations. The work performed was necessary to protect the rights of Kindred stockholders and resulted in the Supplemental Disclosures. Further, the purpose of the fee award is to "compensate the attorney for the reasonable value of services benefiting the . . . claimant." *Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973); *In re Prudential*, 148 F.3d at 333 (same). [12]

In calculating the lodestar amount, Plaintiffs' Counsel have applied their regular hourly rates, which are reasonable for litigation of this nature and are in line with rates approved by courts within the Third Circuit in securities class actions. *Steiner v. Hercules, Inc.*, 835 F. Supp. 771, 786 (D. Del. 1993) ("In determining the reasonable hourly rate by which plaintiffs' counsel should be compensated, the Court looks to the prevailing market rates in the relevant community" and noting that in a securities class action suit the relevant community is the national legal community that

---

16-2214, 2017 U.S. App. LEXIS 18173, at *128 (3d Cir. Sept. 20, 2017) ("[C]onsideration of [the] *Johnson* 'factors' is permissible on the back end of a lodestar's calculation, as long as they are not already 'subsumed in the lodestar calculation.'").

[12]    *See also Kinney v. Int'l Bhd. of Elec. Workers*, 939 F.2d 690, 694 (9th Cir. 1991) ("Fees are allowed for fee litigation in a common benefits case because to do so furthers the purposes served by the allowance of fees on the merits."); *McCafferty v. Local 254, Serv. Emps. Int'l Union*, 186 F.3d 52, 62 (1st Cir. 1999) ("The principle is well established that the fee application is a necessary part of the award of attorney's fees. If the original award was warranted . . . a reasonable amount should be granted for time spent in applying for the award.") (internal quotation marks omitted).

practices securities litigation) (internal quotation marks omitted); *see also Rudel Corp. v. Heartland Payment Sys.*, No. 16-2229, 2018 U.S. Dist. LEXIS 10636, at \*13 (D.N.J. Jan. 22, 2018) (finding a partner hourly rate of $750 and an associate hourly rate of $450 reasonable); *In re Johnson & Johnson Derivative Litig.*, No. 10-2033(FLW), 2013 U.S. Dist. LEXIS 180822, at \*231 (D.N.J. June 13, 2013) (finding hourly rates of $750 for partners and $500 for associates reasonable); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 135 (D.N.J. 2002) (finding rates ranging as high as $635 per hour fifteen years ago reasonable); *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 443 (D.N.J. 2004) (finding an average rate of $672.50 per hour reasonable).[13]

## 2.    Fee Awards in Similar Cases

The Supplemental Disclosures included the type of information that has consistently supported award of attorneys' fees. A number of cases have recognized the value of free cash flow figures. In fact, in *Plato Learning* the Court described an omission of cash flow projections as "inexplicable" and enjoined the transaction on that basis. *Plato Learning*, 11 A.3d at 1178. Thereafter, *Plato Learning* paid $750,000 to plaintiffs' counsel for the omission; *see also Nichting v. DPL Inc.*, No. 3:11-cv-141, Order and Final J. 7 (S.D. Ohio Feb. 24, 2012) ($700,000 fee for disclosure of previously withheld Unlevered Free Cash Flow projections), attached as Ex. 6 to Bennett Decl.; *Aron v. Crestwood Midstream Partners LP*, No. 4:15-CV-1367, 2016 U.S. Dist. LEXIS 152427 (S.D. Tex. Oct. 14, 2016) ($575,000 fee for disclosure of upside case projections). Even more recently, in the pure context of mootness cases, fee awards for lesser quality of the

---

[13]    In addition, Plaintiffs' Counsel's hourly rates are undoubtedly in line with or less than the rates charged by Defendants' Counsel, which is a relevant consideration. *See Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768 n.18 (7th Cir. 1982) ("The rates charged by the defendant's attorneys provide a useful guide to rates customarily charged in this type of case. Also, when the defendant has hired expensive, out of town counsel, the plaintiffs seem justified in saying that the nature of the case required the skills of out of town specialists.")

14

Supplemental Disclosures have yielded fee awards, *see Joel Rosenfeld IRA* v. *Cynosure, Inc., et al.*, Civ. Action No. 17-10309, Stipulation and Order Closing Action (D. Mass. Feb. 5, 2018) ($300,000 fee award), attached as Ex. 7 to Bennett Decl.; *Kim v. BATS Global Markets, Inc.*, No. 2:16-cv-02817, Stipulated Order Dismissing Action (D. Kan. Jan 13, 2017) ($350,000 fee award), attached as Ex. 8 to Bennett Decl.; *Garcia v. Kate Spade & Co*, No. 17-cv-4177, Letter (S.D.N.Y. Aug. 28, 2017) ($320,000 fee award), attached as Ex. 9 to Bennett Decl.

> **3.    The Skill Requisite to Perform the Legal Service Properly, the Novelty and Difficulty of the Question Presented by the Case, the Preclusion of Other Employment, and Time Limitations**

With respect to the skill requisite to perform the legal service properly and the difficultly of the question presented, Plaintiffs' Counsel were required to thoroughly and expeditiously review voluminous proxy statements to assess whether Defendants failed to disclose material information. Plaintiffs' Counsel demonstrated skill in performing the required legal services, and thoroughly and properly analyzing complex proxy statements and valuation analyses is time-consuming and often difficult, even for those experienced in doing so.   "[B]ecause of the complexity and societal importance of stockholder and derivative litigation, the most able counsel should be obtained.  The attorney's fees awarded should reflect this goal." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 866 (E.D. Mo. 2005); *see also In re Schering-Plough Corp. Enhance Sec. Litig.*, No. 08-397 (DMC) (JAD), 2013 U.S. Dist. LEXIS 147981, at *124 (D.N.J. Aug. 28, 2013) (noting that, "by nature securities class actions are inherently complex.") (internal quotation marks omitted).

Additionally, Plaintiffs' Counsel are members of small law firms, and acceptance of this action necessarily precluded them from devoting resources to other cases.  *See Denton v. Pennymac Loan Servs., LLC*, No. 4:16cv32, 2017 U.S. Dist. LEXIS 74037, at *24 (E.D. Va. May

15

12, 2017) (accounting for fact that counsel "is a small law firm and thus representing a client on a contingent fee or fee-shifting basis necessarily involved loss of other opportunities.").

Further, given the rapidly approaching Stockholder Vote, Plaintiffs' Counsel were required to work under intense time pressure to ensure that the Supplemental Disclosures were filed far enough ahead of the Stockholder Vote for stockholders to digest the new information.  Courts have recognized that counsel should not receive a lesser fee for resolving a case quickly because in many instances, such as this litigation, "it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief."  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2002).

### 4.   The Experience, Reputation, and Ability of the Attorneys

The experience, ability and reputation of Plaintiffs' Counsel also supports approving the Fee Motion.   The attorneys at Monteverde & Associates PC have extensive experience in prosecuting stockholder class actions, and the firm's attorneys have obtained significant therapeutic benefits and monetary recoveries for stockholders as sole or co-lead counsel in numerous complex class actions across the country.  *See* Monteverde & Associates Firm Resume, Bennett Decl., Ex. 10; *see also* Cooch and Taylor Firm Resume, Bennett Decl., Ex. 11.  Similarly, Faruqi & Faruqi has extensive experience in prosecuting securities class actions and shareholder derivative and merger and acquisition litigation and has secured substantial benefits and monetary recovers while serving as sole or co-lead counsel in actions across the country.  *See* Faruqi & Faruqi, LLP Firm Resume, Bennett Decl., Ex. 12.  The experience, reputation and ability of Plaintiffs' Counsel supports granting Plaintiffs' Fee Award in full.

### 5.   A Reasonable Multiplier is Appropriate Because Plaintiffs' Counsel Undertook Representation on a Contingent Basis

Plaintiffs' Counsel respectfully submit that, consistent with the *Johnson* factors, a

16

reasonable multiplier of 4.98 is also appropriate in this case.  "After a court determines the lodestar amount, it may increase or decrease that amount by applying a lodestar multiplier.  The multiplier is a device that attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work."  *In re Schering-Plough/Merck Merger Litig.*, No. 09-CV-1099 (DMC), 2010 U.S. Dist. LEXIS 29121, at *55 (D.N.J. Mar. 26, 2010) (internal quotation marks omitted).

The Court should give considerable weight to the fact that Plaintiffs' Counsel undertook representation on a contingency basis.[14] As the Fourth Circuit long ago recognized:

> The contingency of compensation . . . is highly relevant in the appraisal of the reasonableness of any fee claim. The effective lawyer will not win all of his cases, and any determination of the reasonableness of his fees in those cases in which his client prevails must take account of the lawyer's risk of receiving nothing for his services.  Charges on the basis of a minimal hourly rate are surely inappropriate for a lawyer who has performed creditably when payment of any fee is so uncertain.

*McKittrick v. Gardner*, 378 F.2d 872, 875 (4th Cir. 1967).  Indeed, in *In re Rite Aid Corporation Securities Litigation*, the Third Circuit recognized that emphasized the importance of this factor and explained that "[t]he multiplier is a device that attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work." 396 F.3d 294, 305-06 (3d Cir. 2005); *In re Royal Dutch/Shell Transp. Sec. Litig.*, No. 04-374, 2008 U.S. Dist. LEXIS 124269 (D.N.J. Dec. 9, 2009) (*citing Lindy Bros. Builders, Inc.*, 540 F.2d at 117) (the lodestar multiplier should reflect "[t]he risk of not recovering anything for the Class as a result of a dismissal or unfavorable verdict at trial."); *In re Ravisent Techs., Inc. Sec. Litig.*, No. 00-CV-1014, 2005 U.S. Dist. LEXIS 6680, at *43 (E.D. Pa. April 18, 2005) (collecting cases and noting

---

[14]   Factor 10, the undesirability of the action, is relevant only to the extent that the contingency element of this putative class action represents excessive risk for many firms.  Additionally, factor 11, the nature and length of the professional relationship with the client, should not be considered, as the litigation centered on a merger that was first announced on December 19, 2017.

"[l]odestar multiples of less than four are well within the range awarded by courts in [the Third] Circuit.").

Plaintiffs' Counsel risked receiving nothing for their work had they been unable to procure the Supplemental Disclosures, and therefore should be awarded a multiplier to their lodestar.

## VII.   PLAINTIFFS' COUNSEL FEE AWARD UNDER DELAWARE LAW

Kindred is incorporated in Delaware, and it is well-settled under Delaware law that an award of attorneys' fees and expenses is appropriate when counsel's litigation efforts achieve beneficial supplemental disclosures that enable stockholders to better assess the fairness of a merger.  "When a plaintiff pursues a cause of action relating to the internal affairs of a Delaware corporation and generates benefits for the corporation or its stockholders, Delaware law calls for an award of attorneys' fees and expenses . . . ." *In re Del Monte Foods Co. S'holders Litig.*, No. 6027-VCL, 2011 Del. Ch. LEXIS 94, at *26, *35-36 (Del. Ch. June 27, 2011)[15] (finding disclosures related to the projections banker derived and other valuation inputs warranted fee award of $350,000 to $500,000).

---

[15]     Plaintiffs' claim under Section 14(a) clearly "relate[s] to the internal affairs" of Kindred, including the content of the Proxy Defendants issued.  As the Supreme Court explained in discussing the interplay between Section 14(a) and state corporate law, Section 14(a) "was clearly an intrusion of federal law into the internal affairs of corporations[.]"  *Cort v. Ash*, 422 U.S. 66, 85 (1975). The Court may and should exercise supplemental or ancillary jurisdiction over Plaintiffs' claim for attorneys' fees under Delaware law. *See Kalyawongsa v. Moffett*, 105 F.3d 283, 287-88 (6th Cir. 1997) ("Lawyers are officers of the court. Their fees are part of the overall costs of the underlying litigation. Resolution of related fee disputes is often required to provide a full and fair resolution of the litigation. Unlike a state court judge hearing a separate contract action, a federal judge who has presided over a case is already familiar with the relevant facts and legal issues. Considerations of judicial economy are at stake. Thus, we hold that although attorneys' fee arrangements are contracts under state law, the federal court's interest in fully and fairly resolving the controversies before it requires courts to exercise supplemental jurisdiction over fee disputes that are related to the main action."); *Cluett, Peabody & Co. v. CPC Acquisition Co.*, 863 F.2d 251, 256 (2d Cir. 1988) (affirming district court's exercise of ancillary jurisdiction over motion for fees related to work performed in connection with attempting to enjoin tender offer).

In assessing fee awards for such disclosures, Delaware courts apply a rubric based upon the significance of the newly disclosed information, with courts "often award[ing] fees of approximately $400,000 to $500,000 for one or two meaningful disclosures . . ." and slightly lesser fees for helpful disclosures. *Id*. at *27, *36 (finding fee of $350,000 to $400,000 warranted for disclosures related to banker's valuation inputs); *see also In re Plains Res. Inc. S'holders Litig.*, No. 071-N, 2005 Del. Ch. LEXIS 12, at *19 (Del. Ch. Feb. 4, 2005) ("The court awards fees for supplemental disclosures by juxtaposing the case before it with cases in which attorneys have achieved approximately the same benefits.") (internal quotation marks omitted).  The hourly rate represented by a fee and expense award is a secondary consideration in a fee and expense determination under Delaware law.  *See Franklin Balance Sheet Inv. Fund v. Crowley*, No. 888-VCP, 2007 Del. Ch. LEXIS 133, at *46 (Del. Ch. Aug. 30, 2007) ("As a 'backstop check,' this Court also considers whether a contemplated fee award translates into an exorbitant hourly rate. The award this Court is making does represent a high hourly rate of $4,023, that amply rewards Plaintiffs' counsel for undertaking this litigation on a fully contingent basis."); *In re AXA Fin., Inc. S'holders Litig.*, No. 18268, 2002 Del. Ch. LEXIS 57, at *26 (Del. Ch. May 16, 2002) (noting that implied hourly rate of more than $2,630, "while high, is not out of line with those in other cases in which plaintiffs' counsel have achieved a significant benefit to the class with only modest litigation efforts.").  Delaware courts also find a contingency enhancement appropriate.  *See In re Plains Res.*, 2005 Del. Ch. LEXIS 12, at *22 ("[P]laintiffs' counsel were all retained on a contingent fee basis, and stood to gain nothing unless the litigation was successful. It is consistent with the public policy of Delaware to reward this risk-taking in the interests of shareholders."); *In re Golden State Bancorp Inc. S'holders Litig.*, No. 16175, 2000 Del. Ch. LEXIS 8, at *13-15 (Del. Ch. Jan. 7, 2000) ("[W]hen this Court determines fee awards in a therapeutic benefit case, it uses

19

a *quantum meruit* analysis. Under such an analysis, the Court adds a premium to the plaintiffs' attorneys typical noncontingency fee in proportion to the benefit the plaintiffs' attorneys achieved for their clients…A risk premium accounts for the contingent nature of the case and the intense effort required over a short time period by skilled lawyers, even though that effort produced a modest benefit.").

Furthermore, in the mootness context, "a fee can be awarded if the disclosure provides some benefit to stockholders, whether or not material to the vote.  In other words, a helpful disclosure may support a fee award in this context."  *In re Xoom Corp. Stockholder Litig.*, No. 11263-VCG, 2016 Del. Ch. LEXIS 117, at *10 (Del. Ch. Aug. 4, 2016); *see also In re Plains Res.*, 2005 Del. Ch. LEXIS 12, at *21 ("Oftentimes, the court uses a quantum meruit approach to determine the awards for therapeutic benefits, and discounts the fees accordingly if the benefits are meager or the disclosures are only marginally material."); *In re Golden State Bancorp*, 2000 Del. Ch. LEXIS 8, at *8 (awarding fee of $500,000 and holding "it is enough that a reasonable [] stockholder might have considered the additional financials . . . of some interest in deciding how to vote.").

As discussed above in significant detail, Plaintiffs secured the disclosure and dissemination of beneficial Supplemental Disclosures that will enable Kindred stockholders to cast an informed vote.  Accordingly, Plaintiffs are entitled to the requested Fee Award.

**VIII.    CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request the Fee Award be granted.

DATED: March 28, 2018                                    Respectfully submitted,

                                                        **COOCH AND TAYLOR, P.A.**

                                                        */s/ Blake A. Bennett*
                                                        Blake A. Bennett (#5133)
                                                        The Brandywine Building

20

**OF COUNSEL**

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel.: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*

1000 West Street, 10th Floor
Wilmington, DE 19801
Tel.: (302) 984-3800

*Attorneys for Plaintiff*

21