**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

MAZY SEHRGOSHA, Individually and on
Behalf of All Others Similarly Situated,

             Plaintiff,

       v.

KINDRED HEALTHCARE, INC., PHYLLIS R.
YALE, BENJAMIN A. BREIER, JOEL
ACKERMAN, JONATHAN D. BLUM, PAUL
J. DIAZ, HEYWARD R. DONIGAN,
RICHARD GOODMAN, CHRISTOPHER T.
HJELM, FRED J. KLEISNER, SHARAD
MANSUKANI, M.D., and LYNN SIMON,
M.D.,

             Defendants.

C.A. No. 18-0230-RGA

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES**

OF COUNSEL:

Roger A. Cooper
Mark E. McDonald
Hana Choi
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York NY 10006
(212) 225-2283

Dated:  May 11, 2018

Matthew E. Fischer (# 3092)
Timothy R. Dudderar (# 3890)
Jonathan A. Choa (# 5319)
Jacqueline A. Rogers (# 5793)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE  19899-0951
(302) 984-6000

*Attorneys for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................. 5

ARGUMENT ...................................................................................................................... 8

    I.      PLAINTIFFS ARE NOT ENTITLED TO A FEE AWARD ................................... 8

            A.     The PSLRA Bars Attorney's Fees For Non-Monetary Benefits ...................... 8

            B.     Plaintiffs Have Failed To Establish A Violation of Section 14(a),
                Or That They Conferred A Substantial Benefit On Kindred Stockholders .... 10

                1.     The Supplemental Disclosures Were Immaterial ................................. 10

                        i.     Additional Line Items Of Previously-Disclosed Projections........ 11

                        ii.    Details Underlying The Financial Advisors' Analyses ................ 13

                2.     The Omitted Information Did Not Render Any Other Statement
                     In The Proxy False Or Misleading......................................................... 14

    II.     PLAINTIFFS' FEE REQUEST IS EXCESSIVE AND UNREASONABLE......... 16

            A.     The "Time and Labor Required" Does Not Support Plaintiffs'
                Fee Request........................................................................................... 16

            B.     The "Novelty and Difficulty" Of The Issues, The "Skills"
                 Required And The "Preclusion Of Other Employment" Do
                Not Support Plaintiffs' Fee Request ..................................................... 18

            C.     The "Contingent" Nature of the Case Does Not Support Plaintiffs'
                 Excessive Multiplier ............................................................................ 19

             D.     Awards In Similar Cases Do Not Support Plaintiffs' Fee Request ............... 20

CONCLUSION.................................................................................................................. 20

# TABLE OF AUTHORITIES

Page(s)

**Rules and Statutes**

15 U.S.C. 78u-4(b)(1)(B) ................................................................. 15

15 U.S.C. § 78u-4(a)(6) ................................................................. 8, 9

**Cases**

*Abbey v. E.W. Scripps Co.*,
No. 13397, 1995 WL 478957 (Del. Ch. Aug. 9, 1995) ............................... 14

*Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*,
54 F.3d 69 (2d Cir. 1995) ........................................................... 9

*Beck ex rel. Equity Office Props. Trust v Dobrowski*,
No. 06 C 6411, 2007 WL 3407132 (N.D. Ill. Nov. 14, 2007) ...................... 15

*Calleros v. FSI Int'l, Inc.*,
892 F. Supp. 2d 1163 (D. Minn. 2012) ........................................... 13

*Dagenbach v. Bravo Brio Rest. Grp., Inc.*,
No. 2:18-cv-00375, 2018 WL 1938410 (S.D. Ohio. Apr. 23, 2018) ............... 18-19

*Dias v. Purches*,
No. 7199VCG, 2012 WL 4503174 (Del. Ch. Oct. 1, 2012) .......................... 14

*Diaz v. Ignyta, Inc.*,
No. 3:18-cv-00157, 2018 WL 1974347 (S.D. Cal. Jan. 30, 2018) .................. 18

*Finkel v. Am. Oil & Gas, Inc.*,
No. 10-cv-01808-CMA-MEH, 2012 WL 171038 (D. Colo. Jan. 20, 2012) ........... 19, 20

*Fleet Bank v. Steeves*,
793 F. Supp. 18 (D. Me. 1992) .................................................. 17

*Fox v. Vice*,
563 U.S. 826 (2011) ............................................................ 10

*Franklin Balance Sheet Inv. Fund v. Crowley*,
No. CIV.A. 888-VCP, 2007 WL 2495018 (Del. Ch. Aug. 30, 2007) ................. 18

*Haines v. Rocket Fuel Inc.*,
    No. 5:17-cv-04473, 2017 WL 3392592 (N.D. Cal. Aug. 7, 2017) .............................. 18

*Himmel v. Bucyrus Int'l, Inc.*,
    No. 10-C-1104, 2014 WL 1406279 (E.D. Wis. Apr. 11, 2014) .................................. 13

*Hysong v. Encore Energy P'rs, LP*,
    No. 11-781, 2011 WL 5509100 (D. Del. Nov. 10, 2011) ............................................ 10, 15

*IBEW Local 98 Pension Fund v. Cent. Vt. Pub. Serv. Corp.*,
    No. 11-cv-222, 2012 WL 928402 (D. Vt. Mar. 19, 2012) ........................................... 10, 15

*In re 3Com S'holders Litig.*,
    No. 5067-CC, 2009 WL 5173804 (Del. Ch. Dec. 18, 2009) ....................................... 12

*In re Appraisal of Orchard Enters., Inc.*,
    No. 5713-CS, 2012 Del. Ch. LEXIS 165 (Del. Ch. July 18, 2012) ............................ 14

*In re AXA Fin., Inc.*,
    No. 18268, 2002 WL 1283674 (Del. Ch. May 22, 2002) ........................................... 18

*In re BEA Sys., Inc. S'holders Litig.*,
    No. 3298-VCL, 2009 WL 1931641 (Del. Ch. June 24, 2009) ..................................... 17, 20

*In re Cox Radio, Inc. S'holders Litig.*,
    No. 4461-VCP, 2010 WL 1806616 (Del. Ch. May 6, 2010) ....................................... 19

*In re Craftmatic Sec. Litig.*,
    890 F.2d 628 (3d Cir. 1989) ...................................................................................... 12

*In re Hot Topic, Inc. Sec. Litig.*,
    No. CV 13-02939 SJO (JCx), 2014 WL 749935 (C.D. Cal. May 2, 2014) ................. 12

*In re Instinet Grp. Inc., S'holders Litig.*,
    No. Civ.A. 1289-N, 2005 WL 3501708 (Del. Ch. Dec. 14, 2005) .............................. 19

*In re Lucent Techs., Inc. Sec. Litig.*,
    327 F. Supp. 2d 426 (D.N.J. 2004) ........................................................................... 17-18

*In re Nellson Nutraceutical, Inc.*,
    356 B.R. 364 (Bankr. D. Del. 2006) .......................................................................... 14

*In re Plains Res. Inc.*,
    No. CIV.A. 071-N, 2005 WL 332811 (Del. Ch. Feb. 4, 2005) ................................... 19

*In re Pure Res., Inc.*, *S'holders Litig.*,
808 A.2d 421 (Del. Ch. 2002) ....................................................................... 14

*In re Sauer-Danfoss Inc. S'holders Litig.*,
65 A.3d 1116 (Del. Ch. 2011) ......................................................... 18, 19, 20

*In re Schering-Plough/Merck Merger Litig.*,
No. 09-CV-1099 (DMC), 2010 WL 1257722 (D.N.J. Mar. 26, 2010) ......................... 9

*In re Topps Co. S'holders Litig.*,
924 A.2d 951 (Del. Ch. 2007) ....................................................................... 5

*In re Triarc Cos., Inc. S'holders Litig.*,
No. Civ.A. 16700, 2006 WL 903338 (Del. Ch. Mar. 29, 2006) ................................ 17, 20

*In re Trulia, Inc. S'holder Litig.*,
129 A.3d 884 (Del. Ch. 2016) ....................................................................... 1, 2

*In re Walgreen Co. S'holder Litig.*,
832 F.3d 718 (7th Cir. 2016) ....................................................................... 2

*Johnson v. Ga. Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) ....................................................................... 16

*Kennecott Copper Corp. v. Curtiss-Wright Corp.*,
584 F.2d 1195 (2d Cir. 1978) ....................................................................... 10-11

*Kopet v. Esquire Realty Co.*,
523 F.2d 1005 (2d Cir. 1975) ....................................................................... 9

*Koppel v. Wien*,
743 F.2d 129 (2d Cir. 1984) ....................................................................... 9

*Lane v. Page*,
862 F. Supp. 2d 1182 (D.N.M. 2012) ............................................................. 9

*Malon v. Franklin Fin. Corp.*,
No. 3:14CV671-HEH, 2014 WL 6791611 (E.D. Va. Dec. 2, 2014) ........................... 11, 12

*Maric Capital Master Fund Ltd. v. Plato Learning*,
11 A.3d 1175 (Del. Ch. 2010) ....................................................................... 20

*Masters v. Wilhelmina Model Agency, Inc.*,
473 F. 3d 423 (2d Cir. 2007) ....................................................................... 8-9

*Mills v. Elec. Auto-Lite Co.*,
     396 U.S. 375 (1970) ................................................................................. 4, 8, 10

*Mostaed v. Crawford*,
     No. 3:11-cv-00079-JAG, 2012 WL 3947978 (E.D. Va. Sept. 10, 2012) ................... 8

*Orlando v. CFS Bancorp, Inc.*,
     No. 2:13-CV-261 JD, 2013 WL 5797624 (N.D. Ind. Oct. 28, 2013) ......................... 15

*Paprakis v. Skullcandy, Inc.*,
     No. 2:16-cv-810-DB, 2017 WL 2579027 (D. Utah June 14, 2017) ............................ 12

*Resnik v. Swartz*,
     303 F.3d 147 (2d Cir. 2002) ...................................................................... 10-11

*Robinson v. Equifax Info. Servs.*,
     560 F.3d 235 (4th Cir. 2009) ............................................................................. 17

*Rosenblatt v. Getty Oil Co.*,
     493 A.2d 929 (Del. 1985) ............................................................................ 12-13

*Rudel Corp. v. Heartland Payment Sys.*,
     No. 16-2229, 2018 U.S. Dist. LEXIS 10636 (D.N.J. Jan. 22, 2018) .................... 17-18

*SG Cowen Sec. Corp. v. U.S. Dist. Court for the N. Dist. of Cal.*,
     189 F.3d 909 (9th Cir. 1999) ............................................................................... 9

*Smith v. Robbins & Myers*,
     969 F. Supp. 2d 850 (S.D. Ohio 2013) ............................................................... 13

*Sodhi v. Gentium S.p.A.*,
     No. 14-CV-287 (JPO), 2015 WL 273724 (S.D.N.Y. Jan. 22, 2015) ...................... 13

*Starkman v. Marathon Oil Co.*,
     772 F.2d 231 (6th Cir. 1985) .............................................................................. 11

*State of Wis. Inv. Bd. v. Bartlett*,
     No. Civ.A. 17727, 2002 WL 568417 (Del. Ch. Apr. 9, 2002) ..................... 17, 18

*TCG Sec., Inc. v. S. Union Co.*,
     No. 11282, 1990 WL 7525 (Del. Ch. Jan. 31, 1990) ....................................... 14

*TSC Indus., Inc. v. Northway, Inc.*,
     426 U.S. 438 (1976) ............................................................................... 10, 12

## Other Authorities

Cornerstone Research, *Securities Class Action Filings: 2017 Year in Review* (2018),
*available at* https://www.cornerstone.com/Publications/Reports/Securities-Class-
Action-Filings-2017-YIR ................................................................................................... 2

Daniel E. Wolf and David B. Feirstein, *The Evolving M&A Litigation Landscape Post-
Trulia*, Law 360 (April 26, 2016), *available at* https://www.law360.com/
articles/832434/the-evolving-m-a-litigation-landscape-post-trulia ................................... 2

H.R. 369, 104th Cong. (1995) ............................................................................................ 8

Olga Koumrian, Cornerstone Research, *Shareholder Litigation Involving Acquisitions
of Public Companies* (2015), *available at* https://www.cornerstone.com/Shareholder-
Litigation-Involving-Acquisitions-2014-Review ............................................................... 2

Defendants Phyllis R. Yale, Benjamin A. Breier, Joel Ackerman, Jonathan D. Blum, Paul J. Diaz, Heyward R. Donigan, Richard Goodman, Christopher T. Hjelm, Fred J. Kleisner, Sharad Mansukani, M.D., and Lynn Simon, M.D. (the "Individual Defendants"), and Kindred Healthcare, Inc., ("Kindred" and, together with the Individual Defendants, "Defendants") respectfully submit this opposition to plaintiff Mazy Sehrgosha's Motion for an Award of Attorneys' Fees and Expenses, D.I. 27 (the "Fee Request"), and the supporting Declaration of Jonathan A. Choa ("Decl.") and exhibits attached thereto.[1]

## **PRELIMINARY STATEMENT**

Following a now familiar pattern, Plaintiffs' counsel commenced this action claiming material omissions in violation of Section 14(a) of the Exchange Act just days after Kindred filed its preliminary proxy statement with the SEC, and abandoned those claims once Kindred filed immaterial "tell me more" supplemental disclosures several weeks later.  Plaintiffs' counsel now want a "mootness fee" for this gambit, including to compensate them for 60 hours purportedly spent on this case *after* Kindred filed the supplemental disclosures (50 of which were spent on this fee application itself).  As discussed below, however, Plaintiffs' counsel are not entitled to any fee award because (i) the Private Securities Litigation Reform Act (the "PSLRA") bars fee awards for plaintiffs' attorneys in securities class actions like this one in which no money is paid to the class, and, (ii) in any event, Plaintiffs have not shown that they pled a meritorious Section 14(a) claim as was required to recover a fee award in cases like this one before Congress passed the PSLRA.

---

[1] The Fee Request is "joined" by the plaintiff in *Carter v. Kindred Healthcare, Inc.*, Case No. 1:18-cv-00254 (D. Del. Feb. 13, 2018) (together with plaintiff Sehrgosha, "Plaintiffs").  Citations to "Ex.__" hereinafter shall refer to the exhibits attached to Decl.

In recent years, well over 90% of publicly announced mergers in the United States have attracted suits like this one, and many have drawn multiple such suits, as here.[2]  This type of "litigation," which is low-risk to plaintiffs' attorneys and effectively imposes a "merger tax" on all significant public mergers in this country,[3] was once commonly brought in state court – often in the Delaware Court of Chancery.  But recognizing the potential for abuse inherent in these kinds of cases, the Delaware Court of Chancery held that it will no longer approve settlements with fee awards for plaintiffs' counsel unless the omissions identified in the complaint were "plainly material."  *Trulia*, 129 A.3d at 898.

After *Trulia*, the number of suits challenging merger disclosures filed in state courts has dwindled, while the number of such actions brought in federal courts under the Exchange Act has exploded.[4]  Although it is apparent that this phenomenon is the result of plaintiffs' attorneys attempting to evade *Trulia*,[5] federal courts have generally followed *Trulia*'s lead in rejecting settlements in meritless disclosure cases.  *See In re Walgreen Co. S'holder Litig.*, 832 F.3d 718, 724 (7th Cir. 2016) ("[I]n this case the benefit for the class [achieved by six supplemental

---

[2] *See, e.g.*, Olga Koumrian, Cornerstone Research, *Shareholder Litigation Involving Acquisitions of Public Companies* (2015) at 2, *available at* https://www.cornerstone.com/Shareholder-Litigation-Involving-Acquisitions-2014-Review (lawsuits filed in 93% of all mergers announced in 2014 valued over $100 million; for deals valued over $1 billion, 96% attracted lawsuits).

[3] *In re Trulia, Inc. S'holder Litig.*, 129 A.3d 884, 896 n.36 (Del. Ch. 2016).

[4] *See, e.g.*, Cornerstone Research, *Securities Class Action Filings: 2017 Year in Review* (2018), at 2, *available at* https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Filings-2017-YIR ("Federal filings of class actions involving M&A transactions increased to 198, more than double the number in 2016. . . . For the first time, M&A-related class actions accounted for nearly half of all federal [securities] filings.").

[5] *Id*. at 13; *see also* Daniel E. Wolf and David B. Feirstein, *The Evolving M&A Litigation Landscape Post-Trulia*, Law 360 (April 26, 2016), *available at* https://www.law360.com/articles/832434/the-evolving-m-a-litigation-landscape-post-trulia ("To evade the Delaware trends as well as the protective benefits of a forum selection bylaw, which only applies to state law claims, plaintiffs have also sought to recast their deal-related claims as disclosure claims brought in federal court under the proxy or tender offer rules.").

disclosures] was not meager; it was nonexistent.  The type of class action illustrated by this case – the class action that yields fees for class counsel and nothing for the class – is no better than a racket.").  As a result, recent disclosure suits filed in federal courts have almost always followed the same pattern: complaints are filed shortly after the preliminary proxy is filed; parties agree on supplemental disclosures; plaintiffs withdraw their claims, with their counsel reserving the right to seek a mootness fee; and, finally, to avoid further litigation costs, defendants agree on an amount to be paid to plaintiffs' counsel (often no more than $100,000 for all plaintiffs' counsel), which is typically not approved by the court as there is no release of class claims.

If anything, the potential for abuse by plaintiffs' counsel inherent in this practice is even greater than in the "disclosure only" settlements rejected in *Trulia*, as court approval is not required in such cases.  The effect, however, is the same: a merger tax on almost all public mergers.  There is no reason this practice should continue in federal courts.  In fact, Congress passed the PSLRA to deter exactly this kind of lawyer-driven litigation by, among other things, prohibiting plaintiffs' attorneys from being awarded fees where the class does not recover damages.  That is dispositive of the Fee Request where the class has received not a penny.  Although, as described above, the parties in this type of case nearly always settle the fee issue for an amount substantially less than the costs of litigation, the few courts to have reached the issue have held that the PSLRA bars fees in cases like this one.  And Plaintiffs, who chose not to file suit in the Delaware Court of Chancery or assert any claims under Delaware state law, are not entitled to do an end-run around the PSLRA by recovering attorneys' fees under state law.

Even if the PSLRA did not bar the Fee Request – it does – Plaintiffs have failed to establish that they pled a meritorious claim and that the supplemental disclosures provided a substantial benefit to Kindred stockholders, as would have been required to be awarded fees

3

under the pre-PSLRA case, *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 389-90 (1970), on which Plaintiffs rely.  That authority was superseded by the PSLRA for cases like this one; but even if it were not, not only were the supplemental disclosures that Kindred filed in response to the Complaint, as well as complaints in five other cases, immaterial, but Plaintiffs also fail to identify any statement made in the proxy statement that was rendered false or misleading by any alleged omission, as required to plead a Section 14(a) claim.

Finally, even if Plaintiffs were entitled to a fee award at all, this Court should deny Plaintiffs' extravagant demand for $575,000.  Even if the Supplemental Disclosures constituted a substantial benefit, Plaintiffs' counsel cannot claim sole credit for them, as other plaintiffs' counsel (who also are seeking a fee award in this Court) played an equal, if not greater, role in working with Kindred on those disclosures.  Any fees to be awarded to Plaintiffs' counsel would have to be discounted for that reason.  Moreover, the hours submitted by Plaintiffs' counsel are inflated, including because they impermissibly reflect time spent after Plaintiffs' claims were mooted.  Equally unwarranted are the hourly rates of up to $950, for which Plaintiffs' counsel submit no supporting evidence other than self-serving declarations.  Worse yet, Plaintiffs' counsel request that the Court nearly quintuple the already-inflated amount, rendering the billing rate for a *law clerk* approximately $2,000 per hour.  This exorbitant request bears no relation to Plaintiffs' minimal litigation efforts (having filed complaints that are largely copied and pasted from complaints filed by the same counsel in other cases), the unremarkable results achieved (consisting merely of immaterial disclosures), or the amount of fees in analogous cases under Delaware law (as to which the PSLRA does not apply).  Awarding Plaintiffs' counsel their requested fees would only further incentivize plaintiffs' attorneys to continue to file meritless Section 14(a) suits in federal court, contrary to Congress's intent in passing the PSLRA.

## BACKGROUND

On December 19, 2017, Kindred publicly announced that it had entered into a merger agreement with a consortium of buyers pursuant to which Kindred stockholders would be entitled to receive $9.00 per share in cash.  *See* Complaint ("Compl.") ¶ 2.  On February 5, 2018, Kindred filed with the SEC a detailed preliminary proxy statement, which was followed by the definitive proxy statement on February 21, 2018 (the "Proxy") (Ex. A).[6]  The Proxy contained comprehensive information about the transaction, including over 25 single-spaced pages describing the background of the merger, management projections provided to Kindred's financial advisors, and detailed information concerning discounted cash flow and other valuation analyses conducted by the financial advisors.  *See* Ex. A at 39-97.

As has become routine, the merger quickly drew several cookie-cutter class action complaints.[7]  The first of those was filed by Plaintiff Sehrgosha on February 8, 2018, just three days after Kindred filed the preliminary proxy statement.  The 22-page Complaint, like the five that came after it,[8] alleged purported material omissions in the Proxy and asserted claims under Sections 14(a) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9.  Compl. ¶ 1.  The Complaint alleged two categories of purported

---

[6] As relevant here, the preliminary proxy and definitive proxy contain identical disclosures.

[7] *See In re Topps Co. S'holders Litig.*, 924 A.2d 951, 957 (Del. Ch. 2007) ("The reality is that every merger involving Delaware public companies draws shareholder litigation within days of its announcement. An unseemly filing Olympiad typically ensues, with the view that speedy filing establishes a better seat at the table for the plaintiffs' firms involved.").

[8] *Tompkins v. Kindred Healthcare, Inc.*, No. 3:18-cv-00086 (W.D. Ky. Feb. 9, 2018); *Buskirk v. Kindred Healthcare, Inc.*, No. 3:18-cv-00092 (W.D. Ky. Feb. 13, 2018); *Carter v. Kindred Healthcare, Inc.*, No. 1:18-cv-00254 (D. Del. Feb. 13, 2018); *Rosenfeld v. Kindred Healthcare, Inc.*, No. 1:18-cv-00260 (D. Del. Feb. 15, 2018); *Einhorn v. Kindred Healthcare, Inc.*, No. 1:18-cv-00297 (D. Del. Feb. 21, 2018).

omissions.  First, the Complaint alleged that the Proxy omitted certain line items from Kindred's projections, including unlevered free cash flows and illustrative adjustments made in connection with federal tax reform.  *Id.* ¶¶ 32, 34.  The second category concerned certain minutiae of the financial advisors' analyses, such as "the individual multiples" used in their comparable company analyses and "individual targets from each Wall Street analyst."  *Id.* ¶¶ 36-41.  As the Complaint implicitly concedes, however, all of these alleged omissions were superfluous details concerning already disclosed matters.  *See id.* ¶¶ 33-34 (referring to existing Proxy disclosure of projections and illustrative adjustments made to the projections)[9]; *id.* ¶¶ 36-41 (referring to existing Proxy disclosure of the financial advisors' valuation analyses).[10]

On February 16, 2018, Plaintiff Sehrgosha moved for a preliminary injunction, arguing that a subset of the alleged omissions in the Complaint supported granting a preliminary injunction, absent corrective disclosures.  D.I. 15.  On February 20, 2018, Plaintiff Sehrgosha filed a Motion to Expedite Discovery, seeking discovery in aid of the preliminary injunctive relief sought.  D.I. 19.[11]  Before responding to these motions, Kindred notified Plaintiff Sehrgosha and the five other plaintiffs that it was prepared to make certain supplemental disclosures (the "Supplemental Disclosures") to moot their claims.  On February 27, 2018, Plaintiff Sehrgosha withdrew his motions, D.I. 25, and Defendants continued to negotiate with the other plaintiffs as to additional supplemental disclosures.  The Supplemental Disclosures were filed with the SEC on March 6, 2018.

---

[9] *See* Ex. A at 96-97 (disclosing projections); *id.* at 74-76, 86, 90-91, 94 (describing adjustments to projections).

[10] *See* Ex. A at 73-96 (describing the financial advisors' valuation analyses).

[11] It is unclear how Plaintiff Sehrgosha's Motion to Expedite Discovery served any purpose other than to increase Plaintiffs' counsel's fees.

On March 8, 2018, another related action, *Brigade Leveraged Capital Structures Fund Ltd. v. Kindred Healthcare, Inc.*, C.A. No. 2018-0165-SG (Del. Ch. Mar. 8, 2018), was filed in Delaware Court of Chancery, alleging flaws in the sale process and misleading disclosures. After expedited discovery in that case, Kindred made further supplemental disclosures on March 23, 2018.  The Delaware Court of Chancery ultimately declined to enjoin the merger vote, although it directed Kindred to keep the vote open for five additional business days for the limited purpose of allowing stockholders to perfect appraisal rights.  On April 5, 2018, Kindred stockholders voted to approve the merger.[12]

In sum, Plaintiffs' litigation efforts consisted of: (i) filing largely generic complaints and (ii) filing and withdrawing two motions.  Notwithstanding the minimal work done over just a few weeks, Plaintiffs' counsel now seek $575,000 in fees, asserting they achieved a "substantial benefit" for the class.  *See* D.I. 26, Plaintiffs' Memorandum of Law in Support of Plaintiffs' Application For an Award and Attorney's Fees and Expenses ("Pl. Br."), at 6-11.

On May 4, 2018, the plaintiffs in the four other federal actions filed an application for attorney's fees in this Court, seeking $285,000 for the Supplemental Disclosures as well as one additional disclosure not alleged by Plaintiffs – bringing the total of requested fees in these cases to an eye-catching $860,000.[13]

---

[12]  *See* Kindred Healthcare, Inc. Form 8-K (Apr. 15, 2018), *available at* http://investors.kindredhealthcare.com/node/22816/html.

[13]  *See generally* The ETBR Plaintiffs' Memorandum of Law In Support Of Their Application for an Award of Attorney's Fees and Expenses, *Einhorn v. Kindred Healthcare Inc.*, No. 1:18-cv-00279, D.I. 4.  Defendants will respond separately to this fee application pursuant to the stipulation So Ordered by this Court on May 25, 2018.

## ARGUMENT

### I.   PLAINTIFFS ARE NOT ENTITLED TO A FEE AWARD

As matter of law, Plaintiffs are not entitled to a fee because (i) the PSLRA prohibits any fee award in a securities class action for non-monetary stockholder benefits such as the Supplemental Disclosures; and, (ii) in any event, Plaintiffs have neither "established a violation of the securities laws," nor provided a "substantial benefit" to Kindred stockholders as a result of the Supplemental Disclosures, as required for fee-shifting under *Mills*, 396 U.S. at 389-90.

#### A.   The PSLRA Bars Attorney's Fees For Non-Monetary Benefits

By pleading Exchange Act claims on behalf of a purported class, Plaintiffs assumed statutory obligations under the PSLRA, which, *inter alia*, prohibits the award of attorney's fees unless counsel's efforts have led to monetary relief.  In particular, the PSRLA expressly states: "Restrictions on Payment of Attorneys' Fees and Expenses: Total attorney's fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of *any damages and prejudgment interest actually paid to the class.*"  15 U.S.C. § 78u-4(a)(6) (emphasis added).

The PSLRA was designed to curb "abusive securities class action litigation" and  "to exercise supervision and control of the lawyers for the class."  H.R. 369, 104th Cong., at 32 (1995).  Because "[t]he private securities litigation system is . . . . undermined by those who seek to line their own pockets by bringing abusive and meritless suits" and "counsel in securities class actions often receive a disproportionate share of settlement awards," the PSLRA intended to better align the incentives of class counsel with the class, by "limit[ing] the award of attorney[s'] fees and costs to counsel for a class . . . . to a reasonable percentage of the amount of recovery awarded to a class."  *Id.* at 31, 36.

Thus, based on the plain statutory language and clear Congressional intent, federal courts that have considered the issue have held that the PSLRA bars a fee award unless there are damages or a monetary settlement actually paid to the class.  *See Mostaed v. Crawford*, No. 3:11-cv-00079-JAG, 2012 WL 3947978, at *7 (E.D. Va. Sept. 10, 2012) (noting that plaintiffs only achieved supplemental disclosures and "[did] not receive a monetary judgment, so [the PSLRA] clearly precludes them from seeking attorneys' fees based on alleged Securities and Exchange Act violations"); *see also Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 438 (2d Cir. 2007) (stating that while the PSLRA does not apply to the case, if it did, "[t]he PSLRA would not allow for the computation of fees on the basis of [] non-damage items" because "the statute speaks in terms of a percentage 'actually paid to the class'").[14]

Plaintiffs simply ignore this law and instead cite cases that are inapposite, as they either predate the PSLRA,[15] achieved a monetary settlement for the class[16] or were not brought under federal securities laws.[17]  Plaintiffs also urge this Court to apply Delaware law, even though they declined to assert any state law claims, and instead pursued a federal securities action.  Plaintiffs cannot evade the PSLRA now by asserting a right to fees under Delaware law; that would render the restrictions of the PSLRA meaningless.  *See SG Cowen Sec. Corp. v. U.S. Dist. Court for the*

---

[14] *See also infra* Part II.D (in "similar cases" cited by Plaintiffs, the parties agreed to a fee).  In one case, the court granted fees for supplemental disclosures without addressing (or even mentioning) the PSLRA in its 4-page order.  *See* Order, *Comeaux v. Seventy Seven Energy, Inc.*, No. 17-cv-191 (W.D. Okla. Feb. 26, 2018) (awarding $128,345 when $380,000 was requested).

[15] *Koppel v. Wien*, 743 F.2d 129 (2d Cir. 1984); *Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*, 54 F.3d 69 (2d Cir. 1995); *Kopet v. Esquire Realty Co.*, 523 F.2d 1005 (2d Cir. 1975).

[16] *Lane v. Page*, 862 F. Supp. 2d 1182, 1198 (D.N.M. 2012) (cash settlement of $3.8 million).

[17] *In re Schering-Plough/Merck Merger Litig.*, No. 09-CV-1099 (DMC), 2010 WL 1257722, at *16-17 (D.N.J. Mar. 26, 2010) (fiduciary duty claim filed based on diversity jurisdiction).

*N. Dist. of Cal.*, 189 F.3d 909, 913 n.1 (9th Cir. 1999) (plaintiffs cannot "circumvent the [PSLRA] simply by asserting pendent state law claims in federal court").

### B.   Plaintiffs Have Failed To Establish A Violation of Section 14(a), Or That They Conferred A Substantial Benefit On Kindred Stockholders

Even if the PSLRA permitted an award of fees for non-monetary relief – it does not – Plaintiffs are still not entitled to fees here.  "Our legal system generally requires each party to bear his own litigation expenses, including attorney's fees, regardless whether he wins or loses." *Fox v. Vice*, 563 U.S. 826, 832 (2011).  Before Congress enacted the PSLRA, however, courts permitted fee-shifting in Section 14(a) cases for stockholders "who have established a violation of the securities laws" *and* created a "substantial benefit" for stockholders.  *Mills*, 396 U.S. at 389-90.  Even if that standard were still applicable here, it is not satisfied because the information allegedly omitted from the Proxy and then disclosed in the Supplemental Disclosures (i) was immaterial and (ii) did not render any statement in the Proxy false or misleading, as Section 14(a) requires.  *See Hysong v. Encore Energy P'rs, LP*, No. 11-781, 2011 WL 5509100, at *8 (D. Del. Nov. 10, 2011) ("A plaintiff's desire to know information that may be material . . . is not enough to state a claim under Section 14(a) . . . .  [The plaintiff] must point to a statement that is misleading, or is made misleading by operation of a material omission."); *IBEW Local 98 Pension Fund v. Cent. Vt. Pub. Serv. Corp.*, No. 11-cv-222, 2012 WL 928402, at *11 (D. Vt. Mar. 19, 2012) ("[T]he plain language of Rule 14a-9 requires a plaintiff to show both materiality and a false or misleading statement as a result of the omission.").

#### 1.   The Supplemental Disclosures Were Immaterial

To establish materiality for an alleged omission, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Indus., Inc. v.*

*Northway, Inc.*, 426 U.S. 438, 449 (1976).  "Disclosure of an item of information is not required

. . . simply because it may be relevant or of interest to a reasonable [shareholder,]" *Resnik v.*

*Swartz*, 303 F.3d 147, 154 (2d Cir. 2002); "nit-picking should not become the name of the

game," and "[f]air accuracy, not perfection, is the appropriate standard."  *Kennecott Copper*

*Corp. v. Curtiss-Wright Corp.*, 584 F.2d 1195, 1200 (2d Cir. 1978).  As discussed below, none of

the Supplemental Disclosures was material.

> i.   *Additional Line Items Of Previously-Disclosed Projections*

Plaintiffs contend that certain extra line items to the projections added by the

Supplemental Disclosures were material, including the free cash flows, net operating loss

("NOL") projections and illustrative adjustments reflecting federal tax reform.  Pl. Br. at 7-8.  In

doing so, Plaintiffs point to cases generally stating the importance of disclosing projections and

updating them based on intervening events.  *Id.* at 8.  However, this is exactly what Defendants

had originally done *before* Plaintiffs' claims were mooted by the Supplemental Disclosures.  As

the Complaint concedes, the Proxy had already disclosed projections, including for revenue and

EBITDA.  Compl. ¶ 33.  The Proxy had also disclosed that management prepared NOL

projections and that illustrative adjustments had been made to model the potential impact of the

federal tax bill (even the impact of those illustrative adjustments on the financial advisors' DCF

analyses was disclosed).  Compl. ¶¶ 34-35; *see also* Ex. A at 74-76, 86, 90-91, 94.

Federal courts have repeatedly rejected similar claims where the Proxy already disclosed

relevant financial projections,[18] because "the duty of disclosure does not extend to the provision

---

[18]  As a threshold matter, Plaintiffs ignore that, "due to the uncertainty associated with future
projections . . . . their omission is rarely considered material in proxy statements."  *Malon v.
Franklin Fin. Corp.*, No. 3:14CV671-HEH, 2014 WL 6791611, at *8 (E.D. Va. Dec. 2, 2014)
(citing *Walker v. Action Indus., Inc.*, 802 F.2d 703, 709-10 (4th Cir. 1986)); *see also Starkman v.
Marathon Oil Co.*, 772 F.2d 231, 240-41 (6th Cir. 1985) (soft information such as projections

of information so extensive and detailed as to permit stockholders to make an independent

determination of fair value or recreate the analysis of a financial advisor." *See Malon*, 2014 WL

6791611, at *6 (rejecting a claim that omission of unlevered free cash flows is material when the

proxy already included projections for other financial metrics); *Paprakis v. Skullcandy, Inc*., No.

2:16-cv-810-DB, 2017 WL 2579027, at *4 (D. Utah June 14, 2017) (holding that plaintiffs failed

to confer a substantial benefit because "[t]he free cash flow projections in the supplemental

disclosures were consistent with the other extensive financial disclosures included in [the

company's] 60 single-spaced pages of original disclosures regarding the transaction").[19]

Moreover, under Delaware law,[20] which Plaintiffs urge this Court to follow, when a

company "already disclosed summaries [of projections]" in a proxy statement, it is not required

to provide "full versions of the summarized projections." *In re 3Com S'holders Litig.*, No. 5067-

CC, 2009 WL 5173804, at *2-3 (Del. Ch. Dec. 18, 2009) (rejecting disclosure claims for cash

flows and EBITDA estimates). That is particularly true of free cash flow projections prepared by

financial advisors instead of management, as was the case here. *See In re Midas, Inc. S'holders

Litig.*, C.A. No. 7346-VCP, at 18 (Del. Ch. Apr. 12, 2012) (TRANSCRIPT) (Ex. B.) ("I do not

find that our case law supports the proposition that unlevered free cash flows must always be

---

must be disclosed only if reported values "are virtually as certain as hard facts"); *cf. In re
Craftmatic Sec. Litig.*, 890 F.2d 628, 644 (3d Cir. 1989) (holding that, in determining the effect
of an omission, the court must examine whether the information omitted is speculative).

[19] Even Plaintiffs' own authority, *In re Hot Topic, Inc. Sec. Litig.*, No. CV 13-02939 SJO (JCx),
2014 WL 7499375, at *9 (C.D. Cal. May 2, 2014), confirms this approach. The court there
expressly held that plaintiff's claims regarding extra line items for projections, including
unlevered free cash flows, "would be insufficient to maintain a 14(a) claim" by themselves,
without plaintiff's additional allegations regarding the inaccuracy of the projections that were
initially disclosed. *Id.* No such allegations have been made by Plaintiffs here.

[20] Delaware law has adopted the federal materiality standard set forth in *TSC Industries*. *See
Rosenblatt v. Getty Oil Co.*, 493 A.2d 929, 944 (Del. 1985).

disclosed as a general rule."); *Scully v. Nighthawk Radiology Holdings, Inc.*, C.A. No. 5890-VCL, at 23 (Del. Ch. Oct. 21, 2012) (TRANSCRIPT) (Ex. C) ("What would have been a disclosure issue for me was had management prepared a set of free cash flow projections and provided them to [its banker].").

> ii. _Details Underlying The Financial Advisors' Analyses_

Plaintiffs also assert that certain minute details regarding the financial advisors' analyses provided by the Supplemental Disclosures were material. These details include inputs and assumptions used in discounted cash flow analyses, mean and median multiples used in comparable public company analyses, and individual analyst price targets. Pl. Br. 9-10.

But again, federal courts have repeatedly held that granular details such as these are immaterial as a matter of law and have rejected claims that are nearly identical to Plaintiffs' claims here. *See, e.g.*, *Sodhi v. Gentium S.p.A.*, No. 14-CV-287 (JPO), 2015 WL 273724, at *6 (S.D.N.Y. Jan. 22, 2015) ("inputs and assumptions" used in discounted cash flow analysis are immaterial); *Calleros v. FSI Int'l, Inc.*, 892 F. Supp. 2d 1163, 1175 (D. Minn. 2012) (multiples used in selected companies analysis are immaterial); *Himmel v. Bucyrus Int'l, Inc.*, No. 10-C-1104, 2014 WL 1406279, at *19 (E.D. Wis. Apr. 11, 2014) (underlying detail of the pricing multiples is immaterial, as "[d]irectors need not provide financial information that is merely helpful . . . . [n]or must they disclose all data underlying a fairness opinion" (citations omitted)).

Plaintiffs' reliance on *Smith v. Robbins & Myers*, 969 F. Supp. 2d 850 (S.D. Ohio 2013), is misplaced. The court in that case found the inputs used in the DCF analysis to be material specifically because the financial advisor there allegedly used a "grossly inflated" WACC in its DCF analysis and, therefore, the stockholders needed the information to "observe the flaws." *Id.* at 871. Plaintiffs here have made no allegations concerning the reliability of the financial

advisors' valuation analyses.  And *In re Nellson Nutraceutical, Inc.* concerned the admissibility

of expert testimony regarding a valuation of Chapter 11 debtor's business, not a claim that

material information was omitted from a proxy statement, and is not even remotely analogous to

the present case.  356 B.R. 364 (Bankr. D. Del. 2006).

Additionally, it is well-established Delaware law that stockholders are entitled to no more

than a "fair summary" of the financial advisor's work, as confirmed by Plaintiffs' own authority.

*See In re Pure Res., Inc., S'holders Litig.*, 808 A.2d 421, 449-50 (Del. Ch. 2002).[21]  And "the

criteria used to select the ranges, multiples, or transactions that the financial advisors use in their

analyses are not material."  *Dias v. Purches*, No. 7199VCG, 2012 WL 4503174, at *9 (Del. Ch.

Oct. 1, 2012); *TCG Sec., Inc. v. S. Union Co.*, No. 11282, 1990 WL 7525, at *7 (Del. Ch. Jan.

31, 1990); *Abbey v. E.W. Scripps Co.*, No. 13397, 1995 WL 478957, at *3 (Del. Ch. Aug. 9,

1995) (such details will "rarely if ever be material").  As to price target estimates, these already

are public information, so their disclosure cannot possibly be material.  *See In re Vertro, Inc.*

*S'holders Litig.*, Consol. C.A. No. 7010-VCP, at 26 (Del. Ch. Dec. 21, 2011) (TRANSCRIPT)

(Ex. D) ("This information is readily available, public information and, therefore, would not alter

the total mix of information available to stockholders.").

> **2. The Omitted Information Did Not Render Any Other Statement In The Proxy False Or Misleading**

Even assuming the information alleged to have been omitted were material, which it is

not, Plaintiffs' claims still fail because Plaintiffs did not "specify each statement alleged to have

been misleading, [and] the reason or reasons why the statement is misleading" as a result of the

---

[21]  *In re Appraisal of Orchard Enters., Inc.*, No. 5713-CS, 2012 Del. Ch. LEXIS 165 (Del. Ch. July 18, 2012), relied on by Plaintiffs, is irrelevant, as that case concerned post-trial valuation disputes in an appraisal proceeding, not disclosure claims.  *See* Pl. Br. at 10-11.

allegedly omitted information.  15 U.S.C. § 78u-4(b)(1)(B).  In fact, Plaintiffs fail to identify in either the Complaint or its brief even a *single* statement in the Proxy that was false or misleading as a result of the omitted information.

Federal courts, including this Court, have held that a Section 14(a) claim requires "two discrete elements: (1) the omission must be 'material,' and (2) the omission must render some statement included in the proxy solicitation 'false or misleading.'"  *Hysong*, 2011 WL 5509100, at *5; *IBEW Local 98 Pension Fund*, 2012 WL 928402, at *11 (same).  Therefore, Plaintiffs cannot state a Section 14(a) claim simply by "rel[ying] on various *truthful* statements made in the proxy statement and argu[ing] that defendants must tell him more about the subject of those statements."  *Orlando v. CFS Bancorp, Inc.*, No. 2:13-CV-261 JD, 2013 WL 5797624, at *4 (N.D. Ind. Oct. 28, 2013) (emphasis in original).  At best, Plaintiffs do no more than that here.

As they did in their Complaint, Plaintiffs merely make conclusory assertions in their brief in support of their fee request that the alleged omission rendered the Proxy "incomplete and misleading."  *See* Pl. Br. at 9, 11.  Such conclusory allegations are insufficient as a matter of law. *See Hysong*, 2011 WL 5509100, at *8 ("[Plaintiff's] failure to identify even one specific misleading statement cannot push his factual allegations over the speculative-level threshold."); *see also Beck ex rel. Equity Office Props. Trust v. Dobrowski*, No. 06 C 6411, 2007 WL 3407132, at *6 (N.D. Ill. Nov. 14, 2007) (dismissing section 14(a) claims where plaintiff "simply list[ed] information that [d]efendants allegedly omitted" and did not explain how any omitted information rendered other statements misleading).  Thus, even if the PSLRA permitted an award of fees here, Plaintiffs' counsel still would not be entitled to any fee recovery.

**II.     PLAINTIFFS' FEE REQUEST IS EXCESSIVE AND UNREASONABLE**

Not only are Plaintiffs not entitled to a fee award as a matter of law, but the fee amount

requested by Plaintiffs' counsel is unreasonable.  Plaintiffs' counsel seek $575,000 in fees, a

number arrived at using (i) an inflated 216.8 hours of work; (ii) unsupported hourly rates up to

$950; and (iii) an unjustifiable multiplier of 4.98.  *See* Pl. Br. at 13, 17; Pl. Exs. 3-5.  Plaintiffs'

counsel contend they are entitled to this inflated amount under the factors enumerated in *Johnson*

*v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[22]  As discussed below,

the *Johnson* factors do not support such an extraordinary request, and this Court should reject

Plaintiffs' unreasonable fee request entirely, or at a minimum, reduce it significantly in light of

the minimal work performed, the low risk involved in this case, and the non-existent monetary

benefit achieved for the class.

**A.     The "Time and Labor Required" Does Not Support Plaintiffs' Fee Request**

The purported number of hours Plaintiffs' counsel spent on this case (216.8), including

over 50 hours of which were spent on the fee application itself, is grossly inflated.  *See* Pl. Ex. 3-

5.  In fact, Plaintiffs are impermissibly seeking to claim nearly 60 hours that were incurred <u>after</u>

Defendants filed the Supplemental Disclosures on March 6, 2018.  *Id.*  Courts have routinely

rejected similar attempts to collect fees for time spent after the supplemental disclosures were

made, as such time yielded no additional benefit to the class.  *See e.g.*, *In re Triarc Cos., Inc.*

*S'holders Litig.*, No. Civ.A. 16700, 2006 WL 903338, at *2 (Del. Ch. Mar. 29, 2006) (declining

---

[22]  The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the
questions involved; (3) the skill requisite to perform the legal services properly; (4) the
preclusion of other employment by the attorney due to acceptance of the case; (5) the customary
fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the
circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation,
and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the
professional relationship with the client; and (12) awards in similar cases.  *Id.*

to award fees for work done after supplemental disclosures); *State of Wis. Inv. Bd. v. Bartlett*, No. Civ.A. 17727, 2002 WL 568417, at *5 (Del. Ch. Apr. 9, 2002) (same); *cf. In re BEA Sys.*, *Inc. S'holder Litig.*, No. 3298-VCL, 2009 WL 1931641, at *1 (Del. Ch. June 24, 2009) (denying fees for time "spent on aspects of the litigation that produced no benefit").

The requested hourly rates (*e.g.*, $950 for a partner and $400 for a law clerk and a paralegal) are also unwarranted.  First, Plaintiffs' counsel have not met "the burden of proof that the hourly rate sought for each of [their] attorneys [is] reasonable," *Robinson v. Equifax Info. Servs.*, 560 F.3d 235, 244-45 (4th Cir. 2009), as the only supporting evidence they offer are their own declarations.  The Court "[should] not [] accept uncritically what lawyers self-servingly suggest is reasonable compensation for their services." *Fleet Bank of Me. v. Steeves*, 793 F. Supp. 18, 20 (D. Me. 1992); *Robinson*, 560 F.3d at 244 ("In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award.").

In fact, the cases Plaintiffs cite only demonstrate that such rates are unreasonable.  For example, the court in *Rudel Corp. v. Heartland Payment Systems* found the $750/$450 rates for partner/associate reasonable because of the "significant motion practice" in that case (including a motion to dismiss, two motions for class certification and a motion for summary judgment), as well as multiple rounds of mediation that the counsel participated in.  No. 16-2229, 2018 U.S. Dist. LEXIS 10636, at *13 (D.N.J. Jan 22, 2018).  Similarly, the counsel in *In re Lucent Technologies, Inc. Securities Litigation* "devoted more than 61,000 hours to th[e] case for, among other things, discovery investigations, the service of forty-two subpoenas that produced approximately three million pages of discovery, a considerable motion practice, and its

deposition preparations."  327 F. Supp. 2d 426, 435 (D.N.J. 2004).[23]  These facts are starkly

different from the facts in this case, where Plaintiffs' litigation efforts merely consisted of filing

generic complaints and two motions, which were quickly withdrawn in exchange for immaterial

supplemental disclosures and never litigated.  "The absence of effort and the interest in

settlement reinforces the appropriateness of a low award."  *In re Sauer-Danfoss Inc. S'holders

Litig.*, 65 A.3d 1116, 1139 (Del. Ch. 2011).

### B.   The "Novelty and Difficulty" Of The Issues, The "Skills" Required And The "Preclusion Of Other Employment" Do Not Support Plaintiffs' Fee Request

This case concerned entirely unremarkable disclosure allegations, which neither raised

any novel issues nor required any special skills.  *See Bartlett*, 2002 WL 568417, at *6 (rejecting

$7 million fee request and awarding only $234,063, in part because the litigation, which only

succeeded in procuring supplemental disclosures, "was not overly complex or difficult").

Indeed, Plaintiffs' counsel have made nearly identical disclosure claims in numerous

other lawsuits, often parroting the same allegations *word for word*.  *See e.g.*, Amended Class

Action Complaint ¶¶ 31-32; 34-37, *Diaz v. Ignyta, Inc.*, No. 3:18-cv-00157, 2018 WL 1974347

(S.D. Cal. Jan. 30, 2018) (containing verbatim allegations of the Complaint about unlevered free

cash flow and details regarding financial advisors' analyses); Class Action Complaint ¶¶ 39-46,

*Haines v. Rocket Fuel Inc.*, No. 5:17-cv-04473, 2017 WL 3392592 (N.D. Cal. Aug. 7, 2017)

(same); Class Action Complaint ¶¶ 28-36, *Dagenbach v. Bravo Brio Rest. Grp., Inc.*, No. 2:18-

---

[23] The Delaware cases cited by Plaintiffs on this point similarly demonstrate the Fee Request is inflated.  *See* Pl. Br. 19.  In *Franklin Balance Sheet Investment Fund v. Crowley*, the Court of Chancery held that the seemingly high rate was reasonable because "litigation has provided especially favorable results," including a monetary benefit of $37.25 million to minority stockholders.  No. CIV.A. 888-VCP, 2007 WL 2495018, at *1, 13-14 (Del. Ch. Aug. 30, 2007). Likewise, in *In re AXA Financial, Inc.*, the court's decision was primarily based on "the size of the benefit created," which was a "total benefit of $903 million."  No. 18268, 2002 WL 1283674, at *6-7 (Del. Ch. May 22, 2002).

cv-00375, 2018 WL 1938410 (S.D. Ohio. Apr. 23, 2018) (same).  These carbon-copy lawsuits

filed by Plaintiffs' counsel show that filing this action neither involved any difficulty requiring

particular skill nor precluded Plaintiffs' counsel from other employment.

**C. The "Contingent" Nature of the Case Does Not Support Plaintiffs' Excessive Multiplier**

Plaintiffs' counsel request an unwarranted multiplier of 4.98, simply because they

"undertook representation on a contingency basis." Pl. Br. at 17.  But the only cases they cite in

which any multiplier is awarded are where class counsel actually reached a monetary settlement

that created a common fund for the class. *See* Pl. Br. at 17-18.  Not a single case involved a

merely non-monetary benefit consisting of additional disclosures, such as here.

Furthermore, while Plaintiffs' counsel technically pursued these cases on a contingency

basis, they "d[id] not face significant contingency risk" because "[d]isclosure claims . . . are

relatively safe." *Sauer-Danfoss*, 65 A.3d at 1140; *see also In re Cox Radio, Inc. S'holders Litig.*,

No. 4461-VCP, 2010 WL 1806616, at *21 (Del. Ch. May 6, 2010) ("Disclosure claims of the

type Plaintiffs pursued are relatively safe in terms of forcing a settlement.").[24]  Besides, when

"the benefit conferred on the class was modest, the contingent nature of Plaintiffs' fees weighs

against the amount they request." *Finkel v. Am. Oil & Gas, Inc.*, No. 10-cv-01808-CMA-MEH,

2012 WL 171038, at *6 (D. Colo. Jan. 20, 2012); *see also In re Instinet Grp. Inc., S'holders*

*Litig.*, No. Civ.A. 1289-N, 2005 WL 3501708, at *3 (Del. Ch. Dec. 14, 2005) ("where nothing is

achieved, no fee at all is possible").

---

[24] Indeed, in both Delaware cases cited by Plaintiffs on this point, Pl. Br. at 18-19, plaintiffs
advanced inadequate price and process claims, not merely disclosure claims, and in one case,
obtained a price increase representing a $56 million benefit. *See In re Plains Res. Inc.*, No.
CIV.A. 071-N, 2005 WL 332811, at *3 (Del. Ch. Feb. 4, 2005).

### D.    Awards In Similar Cases Do Not Support Plaintiffs' Fee Request

The cases cited by Plaintiffs are inapposite.  In five out of the six cases Plaintiffs cite, the amount of the fee was *agreed to* by the parties, and indeed, the four supporting exhibits Plaintiffs filed contain only copies of the *stipulated* orders, which themselves do not provide any of the underlying information.  *See* Pl. Br. 14-15; Pl. Exs. 6-9.  These uncontested cases do not support Plaintiffs' fee request.[25]  *See Sauer-Danfoss*, 65 A.3d at 1137 (noting that uncontested fee awards lack meaningful precedential value as "the Court suffers from an information vacuum created when the adversity of interests that drives the common law process dissipates"); *see also Finkel*, 2012 WL 171038, at *5 (rejecting cases cited by plaintiff on fee request "because either the benefit conferred on the class was more substantial than mere supplemental disclosures, or the fees were stipulated by the parties").

In fact, the customary fee and awards in analogous cases under Delaware law are far lower.  *See Sauer-Danfoss*, 65 A.3d at 1140 (rejecting $750,000 fee request and instead awarding $75,000 because eleven supplemental disclosures achieved by plaintiff provided only "minimal benefits"); *In re BEA Sys.*, 2009 WL 1931641, at *1 (awarding $81,297 when $350,000 was requested because the "benefit achieved [by supplemental disclosures] was unmistakably modest"); *In re Triarc Cos.*, 2006 WL 903338, at *2-3 (awarding $75,000 for supplemental disclosures despite request for $250,000).

### <u>CONCLUSION</u>

For the forgoing reasons, the Court should deny Plaintiffs' Fee Request.

---

[25] *Maric Capital Master Fund Ltd. v. Plato Learning*, the single contested fee case that Plaintiffs rely on, involved false statements in the proxy – *e.g.*, the proxy expressly stated that a company did not negotiate any terms of post-merger employment with the other company's management when in fact there had been extended discussion on the very topic.  11 A.3d 1175, 1179 (Del. Ch. 2010).  As explained above, Plaintiffs allege no such misrepresentation in the Proxy.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By: */s/ Jonathan A. Choa*

Roger A. Cooper                     Matthew E. Fischer (# 3092)
Mark E. McDonald                    Timothy R. Dudderar (# 3890)
Hana Choi                           Jonathan A. Choa (# 5319)
CLEARY GOTTLIEB STEEN &             Jacqueline A. Rogers (# 5793)
HAMILTON LLP                        Hercules Plaza
One Liberty Plaza                   P.O. Box 951
New York NY 10006                   Wilmington, DE  19899-0951
(212) 225-2283                      (302) 984-6000

Dated:  May 11, 2018                *Attorneys for Defendants*
5808843