## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MAZY SEHRGOSHA, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:18-cv-00230-RGA |
| KINDRED HEALTHCARE, INC., PHYLLIS R. YALE, BENJAMIN A. BREIER, JOEL ACKERMAN, JONATHAN D. BLUM, PAUL J. DIAZ, HEYWARD R. DONIGAN, RICHARD GOODMAN, CHRISTOPHER T. HJELM, FRED J. KLEISNER, SHARAD MANSUKANI, M.D., and LYNN SIMON, M.D., | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES**

**TABLE OF CONTENTS**

I. ATTORNEYS' FEES ARE NOT BARRED BY THE PSLRA ............................................. 1

II. DEFENDANTS CLEARLY VIOLATED SECTION 14(A), WHICH VIOLATION WAS CORRECTED WITH THE SUPPLEMENTAL DISCLOSURES ........................... 3

    A. The Supplemental Disclosures Were Material ......................................................... 3

        1. The Financial Projections in the Supplemental Disclosures were Relied on by the Board and the Financial Advisors ................................................. 3

        2. The Financial Advisors' Summary Omitted Critical Inputs and Assumptions ................................................................................................. 6

    B. The Supplemental Disclosures Corrected Misleading Statements in the Proxy ...... 7

III. PLAINTIFFS' FEE REQUEST IS REASONABLE .......................................................... 8

IV. CONCLUSION ................................................................................................................ 10

**TABLE OF AUTHORITIES**

**Cases**                                                                                                     **Page(s)**

*Azar v. Blount Int'l, Inc.*,
    No. 3:16-cv-483-SI, 2017 WL 1055966 (D. Or. Mar. 20, 2017) ............................................... 8

*In re BEA Sys., Inc. S'holders Litig.*,
    No. 3298-VCL, 2009 WL 1931641 (Del. Ch. June 24, 2009) .................................................. 9

*In re Broadcom Corp. Stockholder Litig.*,
    No. 8:15-cv-00979-JVS-PJW, Order on Lead Counsel's Mot. for an Award of
    Attys' Fees and Expenses (C.D. Cal. Feb. 27, 2017) ............................................................... 2

*In re Celera Corp. S'holder Litig.*,
    No. 6304-VCP, 2012 WL 1020471 (Del. Ch. Mar. 23, 2012) .............................................. 5, 7

*Chrapliwy v. Uniroyal, Inc.*,
    670 F.2d 760 (7th Cir. 1982) .................................................................................................... 9

*Collier v. BrightPoint, Inc.*,
    No. 1:12-cv-1016-TWP-DKL, 2013 WL 1840509 (S.D. Ind. May 1, 2013) .......................... 10

*Comeaux v. Seventy Seven Energy, Inc.*
    No. 17-cv-191, Order (W.D. Okla. Feb. 26, 2018) ................................................................... 2

*Cooke v. Equal Energy Ltd.*,
    No. 5:14-cv-00087-C, Fed. Court Order and Final J. (W.D. Okla. Apr. 8, 2015) .................. 10

*In re Covidien PLC Sec. Litig.*,
    No. 1:14-cv-12949-LTS, Order and Final J. (D. Mass. Sept. 23, 2015) ................................... 2

*Douglas v. Affymetrix, Inc.*,
    Case No. 16-cv-00921-WHO, Final Order and J. (N.D. Cal. Dec. 27, 2016) ........................ 10

*Johnson v. Ga. Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) .................................................................................................. 10

*Kalyawongsa v. Moffett*,
    105 F.3d 283 (6th Cir. 1997) .................................................................................................... 3

*Kennecott Copper Corp. v. Curtiss-Wright Corp.*,
    584 F.2d 1195 (2d Cir. 1978) ............................................................................................... 3, 4

*Kinney v. Int'l Bhd. of Elec. Workers*,
    939 F.2d 690 (9th Cir. 1991) .................................................................................................... 9

*Lambert v. Tellabs, Inc.*,
    No. 13-cv-07945, Final Order and J. (N.D. Ill. Sept. 11, 2015) ............................................... 2

*Lane v. Page*,
    862 F. Supp. 2d 1182 (D.N.M. 2012) ................................................................................2

*Malon v. Franklin Fin. Corp.*,
    No. 3:14CV671-HEH, 2014 WL 6791611 (E.D. Va. Dec. 2, 2014) .........................................5

*Masters v. Wilhelmina Model Agency, Inc.*,
    473 F.3d 423 (2d Cir. 2007) ................................................................................1

*In re MetroCorp Bancshares, Inc. S'holders Litig.*,
    No. 4:13-cv-03198, Order Approving Settlement and J. (S.D. Tex. Oct. 23, 2014) .................2

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970) ...........................................................................................1

*Mostaed v. Crawford*,
    No. 3:11-cv-00079-JAG, 2012 WL 3947978 (E.D. Va. Sept. 10, 2012) ..................................1

*In re Netsmart Techs., Inc. S'holders Litig.*,
    924 A.2d 171 (Del. Ch. Mar. 14, 2007) ............................................................4, 6

*Newby v. Enron Corp.*,
    188 F. Supp. 2d 684 (S.D. Tex. 2002) ...................................................................3

*Nichting v. DPL Inc.*,
    No. 3:11-cv-141, Order and Final J. (S.D. Ohio Feb. 24, 2012) ........................................10

*Paprakis v. Skullcandy, Inc.*,
    No. 2:16-cv-810-DB, 2017 WL 2579027 (D. Utah June 14, 2017) .........................................6

*In re Pure Res., Inc., S'holders Litig.*,
    808 A.2d 421 (Del. Ch. 2002) ................................................................................5

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005) ...............................................................................2, 3

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
    No. 04-374, 2008 WL 9447623 (D.N.J. Dec. 9, 2008) ...................................................10

*Schell v. OXY USA, Inc.*,
    814 F.3d 1107 (10th Cir. 2016) ............................................................................2

*SG Cowen Sec. Corp. v. U.S. Dist. Court*,
    189 F.3d 909 (9th Cir. 1999) ..............................................................................3

*Smith v. Robbins & Myers*,
    969 F. Supp. 2d 850 (S.D. Ohio 2013) ...............................................................6, 7

*State of Wis. Inv. Bd. v. Bartlett*,
 No. 17727, 2002 WL 568417 (Del. Ch. Apr. 9, 2002) ............................................................9

*Steiner v. Hercules, Inc.*,
 835 F. Supp. 771 (D. Del. 1993) ............................................................................................9

*In re Triarc Cos., Inc. S'holders Litig.*,
 No. 16700, 2006 Del. Ch. LEXIS 66 (Del. Ch. Mar. 29, 2006) ...............................................9

*In re Trulia, Inc. S'holder Litig.*,
 129 A.3d 884 (Del. Ch. 2016) ...............................................................................................10

*In re Witt*,
 113 F.3d 508 (4th Cir. 1997) ..................................................................................................1

**Statutes**

15 U.S.C. § 77k(a) ......................................................................................................................3

15 U.S.C. § 78u-4(a)(6) ..............................................................................................................2

**Other Authorities**

H.R. Conf. Rep. 104-369 (1995) .................................................................................................1

Charles McGrath,
 *80% of equity market cap held by institutions*, Pensions & Investments (Apr. 25, 2017) ........5

Plaintiff Mazy Sehrgosha through undersigned counsel, joined by Plaintiff Debra Carter ("Plaintiffs"), respectfully submits this reply memorandum of law in further support for an award of attorneys' fees and expenses in the amount of $575,000 (the "Fee Award").[1]

## I. ATTORNEYS' FEES ARE NOT BARRED BY THE PSLRA

Defendants offer a red herring of an argument that clearly conflicts with established canons of statutory interpretation and the Supreme Court's holding in *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 396-7 (1970) by claiming the PSRLA (15 U.S.C. § 78u-4(a)(6)) has curtailed this Court's equitable authority to award attorneys' fees and expenses in this case where no class has been certified, no settlement has been reached, and no class claims are released.[2]

First, *Mills* recognizes the Court's inherent equitable authority to award fees and there is no language in the PSLRA or even a hint in the legislative history of the PSLRA, that Congress meant to overturn *Mills*.[3] "'It is firmly entrenched that Congress is presumed to enact legislation with knowledge of the law.' The upshot of this canon of statutory interpretation is that 'absent a clear manifestation of contrary intent, a newly-enacted or revised statute is presumed to be harmonious with existing law and its judicial construction.'" *In re Witt*, 113 F.3d 508, 513 (4th Cir. 1997) (citations omitted); *id.* at 513 ("Had Congress intended to overrule [a Supreme Court opinion], we expect Congress would have discussed that in the legislative history."). Indeed,

---

[1]   The reference to "Plaintiffs" in this Brief refers solely to Plaintiffs Sehrgosha and Carter.
[2]   *Mostaed v. Crawford*, No. 3:11-cv-00079-JAG, 2012 WL 3947978 (E.D. Va. Sept. 10, 2012) cited by Defendants, is an outlier case based on an unreasoned statement of dicta that has not been followed or repeated since. That case began as a derivative claim that had a poorly delineated Section 14(a) claim added by amendment in what appears to be an afterthought. Most importantly, both the plaintiff and the defendant had the mistaken view that 15 U.S.C. § 78u-4(a)(6) precluded attorney's fees. *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007) similarly offered *dicta* in an antitrust case about the perceived scope of PSLRA to fee applications in general.
[3]   To the contrary, Congress intended "to give the court flexibility in determining what is reasonable on a case-by-case basis." H.R. Conf. Rep. 104-369, at 36 (1995).

1

federal courts routinely award attorneys' fees and expenses for work performed to obtain non-monetary benefits to stockholders in situations like this one since the passage of the PSLRA. *See, e.g., In re Broadcom Corp. Stockholder Litig.*, No. 8:15-cv-00979-JVS-PJW, Order on Lead Counsel's Mot. for an Award of Attys' Fees and Expenses (C.D. Cal. Feb. 27, 2017) (approving fees of $1,125,000 for disclosures mooting claims under §§ 14 and 20) (Decl. of Blake A. Bennett in Further Supp. of Ps' Application for an Award of Attys' Fees and Expenses ("Bennett Decl.") Ex. 1); *In re MetroCorp Bancshares, Inc. S'holders Litig.*, No. 4:13-cv-03198, Order Approving Settlement and J. (S.D. Tex. Oct. 23, 2014) (alleging violations of federal securities laws and breach of fiduciary duty) (Bennett Decl., Ex. 2); *In re Covidien PLC Sec. Litig.*, No. 1:14-cv-12949-LTS, Order and Final J. at 7 (D. Mass. Sept. 23, 2015) (approving $540,000 fee for disclosures with allegations of federal securities law violations) (Bennett Decl., Ex. 3); *Lambert v. Tellabs, Inc.*, No. 13-cv-07945, Final Order and J. (N.D. Ill. Sept. 11, 2015) (alleging violations of federal securities disclosure laws) (Bennett Decl., Ex. 4); *Comeaux v. Seventy Seven Energy, Inc.* No. 17-cv-191, Order (W.D. Okla. Feb. 26, 2018) (awarding attorneys' fees for disclosures mooting §§ 14 and 20 claims in the face of the same PSLRA-related argument raised here) (Bennett Decl., Ex. 5).

Moreover, the PSLRA by its own terms applies only to certified class actions involving the recovery of monetary damages and does not purport to extend to and limit the Court's authority in equity. 15 U.S.C. § 78u-4(a)(6). Here, counsel seeking fees were not counsel for a certified class. And because no class was certified, there is no class counsel, or "counsel for the plaintiff class."[4]

---

[4] Moreover, the common benefit doctrine is recognized as an "equitable exception available when the litigation confers a substantial common benefit on the class." *See Schell v. OXY USA, Inc.*, 814 F.3d 1107, 1126 (10th Cir. 2016); *Lane v. Page*, 862 F. Supp. 2d 1182, 1255 n.19 (D.N.M. 2012) ("The Court may [] based on the common-benefit doctrine, consider non-economic benefits to the class when determining [if] fees are appropriate."); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d

2

Finally, Defendants miss the mark in citing *SG Cowen Sec. Corp.* for the proposition that equitable relief under Delaware state law is barred by the PSLRA. Def. Brief at 9-10.[5] The reasoning for this is simple - this Court has broad equity power to supervise the collection of attorneys' fees under contingent fee contracts. *Kalyawongsa v. Moffett*, 105 F.3d 283, 286 (6th Cir. 1997) ("Thus, we hold that although attorneys' fee arrangements are contracts under state law, the federal court's interest in fully and fairly resolving the controversies before it requires courts to exercise supplemental jurisdiction over fee disputes that are related to the main action.").

At bottom, Defendants' novel, but unsupported, interpretation of the PSLRA should be rejected.

## II.   DEFENDANTS CLEARLY VIOLATED SECTION 14(A), WHICH VIOLATION WAS CORRECTED WITH THE SUPPLEMENTAL DISCLOSURES

### A.   The Supplemental Disclosures Were Material

#### 1.   The Financial Projections in the Supplemental Disclosures were Relied on by the Board and the Financial Advisors

Defendants skirt the facts in this case to cast Plaintiffs' claims as "nitpicking" and to argue that "[f]ederal courts have repeatedly rejected similar claims where the Proxy already disclosed relevant financial projections." Def. Opp. at 11.[6] The false premise of Defendants' argument is

---

294, 300 (3d Cir. 2005). And a district court's equitable powers are "not to be denied or limited in the absence of a clear and valid legislative command . . . . absent clear direction to the contrary from Congress, federal courts have the power to award any appropriate relief in a cognizable cause of action under a federal statute[.]" *Newby v. Enron Corp.*, 188 F. Supp. 2d 684, 698 (S.D. Tex. 2002) (citations omitted). Any other reading of the PSLRA would put it at odds with other securities laws, including Section 11 of the Securities Act of 1933, which provides that a person who suffers damages because of a false registration statement may sue "either at law or in equity[.]" 15 U.S.C. § 77k(a).

[5]   *SG Cowen Sec. Corp. v. U.S. Dist. Court*, 189 F.3d 909 (9th Cir. 1999) was a case involving the Discovery Stay Provision of the PSLRA, which denied plaintiffs' argument that their filed state law breach of fiduciary duty claims were exempt from the Stay Provision. This holding is inapplicable to the instant case, since Plaintiffs do not seek to circumvent the PSLRA, but offer the Court an independent source of equitable relief upon which to grant Plaintiffs' Motion.

[6]   Defendants' reliance on *Kennecott Copper Corp. v. Curtiss-Wright Corp.*, 584 F.2d 1195,

3

that disclosing only EBITDA and Revenue projections and revealing that they also prepared others for the Board's consideration, but failed to disclose them (*e.g.,* NOL Utilization), met their obligations under Section 14(a).  That clearly is wrong when the Board and the Financial Advisors admittedly utilized the omitted information and Defendants failed to disclose iterations of projections that may have supported a higher merger consideration.

These omissions exacerbated the Board's reliance on the two disclosed non-GAAP projected financial measures, one of which – EBITDA – is inherently subject to manipulation and abuse.  Moreover, the fact that the Financial Advisors ultimately prepared the unlevered free cash flow ("UFCF") projections is a red herring in a Section 14(a) case. Def. Brief at 12.  The projected UFCF were based on the Company's underlying financial projections, there were three iterations of UFCF, and UFCF was utilized by the Financial Advisors in conducting their respective DCF analyses in support of their fairness opinions.  By failing to disclose the UFCF projections originally, the Proxy "fail[ed] to give [Kindred] stockholders the best estimate of the company's future cash flows." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 203 (Del. Ch. Mar. 14, 2007)

Defendants do not address the Company's omitted projected NOL Utilization and the illustrative adjustments related to the potential impact of the expected U.S. federal tax reform, material information that was obtained by Plaintiffs in the Supplemental Disclosures.  Indeed, Defendants effectively conceded the materiality of this information by disclosing that it factored

---

1200 (2d Cir. 1978) does not help their cause. Defs. Br. at 11.  There, the Second Circuit examined whether a company's proxy materials misled investors that the board had "thorough investigation" the potential consequences of an acquisition plan when the proxy had disclosed that the company had not performed a "detailed study" of consequences.  They held that the proxy was not misleading, noting that "Fair accuracy, not perfection, is the appropriate standard." *Id. at* 1200.  Here, the Proxy did not meet the standard of "fair accuracy" until the Supplemental Disclosures were issued.

4

prominently in both the Board's decision and negotiations (Proxy at 61, 119, A-16 to A-17) and the analyses conducted by the Financial Advisors (Proxy at 61, 74, 75, 77, 80, 81, 89).[7]

Rather than tackle these specific omissions and the value to shareholders in the Supplemental Disclosures, Defendants reach for choice language from inapposite case authority. For example, Defendants rely heavily on *Malon v. Franklin Fin. Corp.*, No. 3:14CV671-HEH, 2014 WL 6791611 (E.D. Va. Dec. 2, 2014), to argue that the Company's financial projections are not material. Plaintiffs respectfully submit that the *Malon* court incorrectly opined that financial metrics such as UFCF (and earning per share ("EPS")) would be foreign to the average stockholder. *Id.* at *6. That simply does not comport with reality when many publicly traded companies regularly rely on and disclose these critical metrics as a measure of a company's financial health and future prospects.[8] In fact, the *Malon* court, in finding that UFCF projections were not material, cited *Pure Resources*, which explicitly states that "courts must be candid in acknowledging that the disclosure of the banker's 'fairness opinion' alone and without more, provides stockholders with nothing other than a conclusion, qualified by a gauze of protective language designed to insulate the banker from liability." *In re Pure Res., Inc., S'holders Litig.*, 808 A.2d 421, 449 (Del. Ch. 2002).

---

[7] Moreover, courts have recognized the materiality of tax related considerations, including net operating losses. *See In re Celera Corp. S'holder Litig.*, No. 6304-VCP, 2012 WL 1020471, at *32 (Del. Ch. Mar. 23, 2012) ("First, whereas the [Proxy] disclosed only the fact that [the financial advisor] had factored the Company's net operating losses into the DCF analysis, the Supplemental Disclosure discloses the annual dollar amount of these tax savings . . . ."), *rev'd on other grounds, In re Celera Corp. S'holder Litig.*, 59 A.3d 418, 422 (Del. 2012).

[8] Plaintiffs respectfully submit that the *Malon* court did not consider that that 80% of U.S. equity market cap is owned by institutions typically managed by professional investment advisors, for whom these and other financial metrics are critical. *See* Charles McGrath, *80% of equity market cap held by institutions*, Pensions & Investments (Apr. 25, 2017), *available* at www.pionline.com/article/20170425/INTERACTIVE/170429926/80-of-equity-market-cap-held-by-institutions.

Defendants reliance on *Paprakis v. Skullcandy, Inc.*, No. 2:16-cv-810-DB, 2017 WL 2579027, at *4 (D. Utah June 14, 2017) similarly is unavailing. The court there provided little to no analysis or rationale, other than a vague reference to "different facts" as to why the financial projections were immaterial despite the court's acknowledgement that several courts had held "free cash flow projections influenced [a] shareholders' decision-making process." *Id*. Nor does the *Paprakis* court explain how it determined that the additional financial information was "consistent with the other extensive financial disclosures[,]" something shareholders would not have been able to confirm without the additional information. *Id*.

### 2. The Financial Advisors' Summary Omitted Critical Inputs and Assumptions

Defendants' contention that the underlying data, including the assumptions and inputs, utilized by the Financial Advisors offered nothing more than "minute" and "granular" details, also is unsupported by the facts and law. Def. Opp. at 13-14.

As discussed in Plaintiffs' opening brief, the Supplemental Disclosures revealed key inputs and assumptions underlying each Barclays' and Guggenheim's DCF analyses, including how the Financial Advisors determined their respective ranges of discount rates, the terminal cash flow values, the assumed amount of debt for the Company, and the book value of preferred stock. *See, e.g.*, *Netsmart*, 924 A.2d at 203 ("Once a board broaches a topic in its disclosures, a duty attaches to provide information that is 'materially complete and unbiased by the omission of material facts.'").

Defendants meekly try to distinguish *Smith v. Robbins & Myers,* 969 F. Supp. 2d 850 (S.D. Ohio 2013), a case relied on by Plaintiffs, by arguing that the court there found specific flaws in the financial advisor's analysis (specifically the WAAC in relation to the DCF analysis). Def. Opp. at 13. But that is misleading because the *Smith* court did not find the inputs material because

6

of an alleged "grossly inflated WACC" as Defendants contend. Defs. Br, at 13. Rather the *Smith* court found that when a proxy "d[oes] in fact disclose how [a financial advisor's] determined the discount rates used in its DCF," no further disclosure is necessary. *Robbins & Myers, Inc.*, 969 F. Supp. 2d at 872. The court then determined that a failure to disclose "a similar explanation" was a material omission form the proxy. Here, the Supplemental Disclosures contained critical inputs that Barclays and Guggenheim used to render their fairness opinion and provided Kindred shareholders with a fair summary of the Financial Advisors' selection of comparable companies. Defendants contention that purported public information "cannot possibly be material" misses the point. Def. Opp. at 14. It is what the financial advisor does with the public information that is material to shareholders. "[A] fair summary of a comparable companies or transactions analysis probably should disclose the market multiples derived for the comparable companies or transactions." *Celera*, 2012 WL 1020471, at *32 & n.242 (citing *Turberg v. ArcSight, Inc.*, No. 5821-VCL, tr. at 43 (Del. Ch. Sept. 20, 2011) ("[I]f you were to consider what really constitutes a fair summary, then the background multiples should be in there, just like they're in there when you give them to the board . . . . [Y]ou would never see a board book that would go to the board without the background multiples.").

    **B.**   **The Supplemental Disclosures Corrected Misleading Statements in the Proxy**

  Defendants cannot support their contention that "Plaintiffs fail to identify . . . even a single statement in the Proxy that was false or misleading as a result of the omitted information" by simply ignoring the allegations pled by Plaintiffs. Def. Opp. at 15.

  Plaintiff Sehrgosha specifically alleged that the failure to disclose the three sets of projections reflecting the impact of recent federal tax legislation, changes to Medicare reimbursements, and NOL Utilizations, rendered the financial projections that were disclosed and Guggenheim's Discounted Cash Flow Analysis misleading. *See* Sehrgosha Compl. ¶34. Indeed,

7

Guggenheim valued Kindred equity under its DCF with the Tax Projections (which originally were not disclosed) up to $18.21—over double the amount of the $9.00 Merger Consideration and 76% higher than the upper limit of the reference range using the included projections (the low end of the reference range increased by a factor of 3.7). *See Azar v. Blount Int'l, Inc.*, No. 3:16-cv-483-SI, 2017 WL 1055966, at *6 (D. Or. Mar. 20, 2017) ("a reasonable shareholder would want to know management's most optimistic projections [the omitted "September Projections"] when assessing the fairness of the Merger stock price and would question the reduction in financial outlook that the November and December projections presented.").

Plaintiffs further allege that the omission of the estimated NOL Utilizations and the projections adjusted for the Tax Bill rendered the financial projections in the Proxy materially incomplete and misleading because without being disclosed "these sets of projections appear to present the Company as being more valuable than the base projections." Sehrgosha Compl. ¶34.

Finally, with regard to the Financial Advisors' analyses, Plaintiffs clearly identify that the summaries of those financial analyses included in the Proxy are materially misleading as a result of the omitted information. Sehrgosha Compl. ¶ 35-40.

## III.  PLAINTIFFS' FEE REQUEST IS REASONABLE

Defendants contend that the Fee Award requested is unreasonable under the *Johnson* factors because Plaintiffs' counsel's hours, rates, and multiplier are inflated. Defendants' argument should be rejected as they rely on inapposite case law and make general propositions that find no support in this jurisdiction.

Defendants rely on inapposite authority to argue that Plaintiffs' counsel have "inflated" their hours by including time spent after the Supplemental Disclosures were released. Def. Opp.

8

16-17.[9] Indeed, numerous courts have held that time spent by Plaintiffs' Counsel on a fee application may be compensable. *See e.g., Kinney v. Int'l Bhd. of Elec. Workers*, 939 F.2d 690, 694 (9th Cir. 1991). Thus, there is nothing "impermissible" about including time invested to seek compensation for the benefit obtained for Kindred shareholders.

Defendants also argue that Plaintiffs' Counsel's hourly rates are too high, but only rely on self-serving statements in support (*see* Def. Opp. at 17) and have ignored Plaintiffs' authority that clearly and explicitly approve similar hourly rates for work performed for a national class action. *See* Plaintiffs' Op. Br. at 13-14.[10]

Defendants contentions regarding the substance of the issues at hand, the skills required by Plaintiffs' Counsel, and the preclusion of other employment are unfounded. Plaintiffs' Counsel was required to thoroughly review the Proxy, determine whether there were any material deficiencies under both federal securities and state corporate law, draft a well-pled complaint, draft a preliminary injunction motion, and draft a motion to expedite discovery. All of this was being done on a truncated timeline (there were only 30 days between the filing of the Preliminary Proxy and the Supplemental Disclosures).

---

[9] Those cases are distinguishable. *See In re BEA Sys., Inc. S'holders Litig.*, No. 3298-VCL, 2009 WL 1931641, at *1 (Del. Ch. June 24, 2009) ("[T]he bulk of the claims asserted produced no compensable benefit at all."); *State of Wis. Inv. Bd. v. Bartlett*, No. 17727, 2002 WL 568417, at *5 (Del. Ch. Apr. 9, 2002) ("These fees do not relate to the successful disclosure claim and do not warrant an award payable by the company."); *In re Triarc Cos., Inc. S'holders Litig.*, No. 16700, 2006 Del. Ch. LEXIS 66, at *5-8 (Del. Ch. Mar. 29, 2006) (finding that counsel was not entitled to fees for work regarding therapeutic benefits that plaintiff was not claiming was caused by the action nor for work regarding non-meritorious claims.).

[10] *See Steiner v. Hercules, Inc.*, 835 F. Supp. 771, 786 (D. Del. 1993) ("In determining the reasonable hourly rate by which plaintiffs' counsel should be compensated, the Court looks to the prevailing market rates in the relevant community[]" and noting that in a securities class action suit the relevant community is the national legal community that practices securities litigation) (internal quotation marks omitted). Moreover, Plaintiffs' Counsel's hourly rates are undoubtedly in line with or less than the rates charged by Defendants' Counsel, which is a relevant consideration. *See Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768 n.18 (7th Cir. 1982).

The fact that Plaintiffs' Counsel has filed actions in similar contexts only lends support to the fact that Plaintiffs' Counsel has developed the necessary skills to prosecute an action of this nature. Moreover, the support cited by Defendants regarding purported lack of "contingency risk" is inapposite in today's current legal environment including the Court of Chancery's decision in *Trulia*. Finally, Defendants only cite three Delaware state cases to support the proposition that the Fee Award is unreasonably high, and ignore the numerous cases supporting the Fee Award here.[11]

Whereas here, Plaintiffs' Counsel risked receiving nothing for their work had they been unable to procure the Supplemental Disclosures, Plaintiffs' Counsel respectfully submit that, consistent with the *Johnson* factors, a reasonable multiplier of 4.98 is also appropriate in this case. *In re Royal Dutch/Shell Transp. Sec. Litig.*, No. 04-374, 2008 WL 9447623, at *78 (D.N.J. Dec. 9, 2008) (citing *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir. 1976)) (the lodestar multiplier should reflect "the risk of not recovering anything for the Class as a result of a dismissal or unfavorable verdict at trial. . . .").

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request the Fee Award be granted.

DATED: May 29, 2018                               Respectfully submitted,

                                                  **COOCH AND TAYLOR, P.A.**

**OF COUNSEL**
                                                   /s/ Blake A. Bennett
                                                  Blake A. Bennett (#5133)
**MONTEVERDE & ASSOCIATES PC**                    The Brandywine Building
Juan E. Monteverde                                1000 West Street, 10th Floor
The Empire State Building                         Wilmington, DE 19801
350 Fifth Avenue, Suite 4405

---

[11] *Douglas v. Affymetrix, Inc.*, Case No. 16-cv-00921-WHO, Final Order and J. (N.D. Cal. Dec. 27, 2016) (awarding attorneys' fees and expenses in the amount of $1,000,000.00) (Bennett Decl., Ex. 6); *Cooke v. Equal Energy Ltd.*, No. 5:14-cv-00087-C, Fed. Court Order and Final J. (W.D. Okla. Apr. 8, 2015) ($650,000 fee) (Bennett Decl., Ex. 7); *Collier v. BrightPoint, Inc.*, No. 1:12-cv-1016-TWP-DKL, 2013 WL 1840509, at *3 (S.D. Ind. May 1, 2013) ($600,000 fee); *Nichting v. DPL Inc.*, No. 3:11-cv-141, Order and Final J. (S.D. Ohio Feb. 24, 2012) ($700,000 fee for disclosure of previously withheld projections) (Bennett Decl., Ex. 8).

New York, NY 10118  
Tel.: (212) 971-1341  
Fax: (212) 202-7880  
Email: jmonteverde@monteverdelaw.com

*Attorney for Plaintiff*

Tel.: (302) 984-3800

*Attorney for Plaintiff*

11